**NORFOLK AND WESTERN RAILWAY COMPANY, Plaintiff,**

v.

**The PUBLIC UTILITIES COMMISSION OF OHIO, et al., Defendants.**

No. C2–87–766.

United States District Court, S.D. Ohio, E.D.

Jan. 2, 1990.

Daniel A. Brown, Diane C. Reichwein, Porter, Wright, Morris & Arthur, Columbus, Ohio, for plaintiff.

Robert S. Tongren, James B. Gainer, William L. Wright, Asst. Atty. Gen., Public Utilities Section, Columbus, Ohio, for defendant, Public Utilities Com'n.

Mark A. Adams, Greiser, Schafer & Blumenstiel, Columbus, Ohio, for defendant, Co-operative Legislative Committee Brotherhoods & Railroad Unions, State of Ohio.

## MEMORANDUM OPINION

GRAHAM, District Judge.

Plaintiff Norfolk and Western Railway Company (N & W) is an interstate rail carrier which owns and operates railroad bridges in the State of Ohio. In March of 1987, the Public Utilities Commission of Ohio (PUCO) ordered N & W to provide walkways and railings for trainmen along at least one side of two N & W bridges located in Medina, Ohio and Akron, Ohio. This order was based upon the provisions of § 4901:3–1–05(D) of the Ohio Administrative Code which provides that:

> A suitable walk and railing from which trainmen may walk shall be provided along at least one side of all bridges and coal, ore, or other trestles.

On June 23, 1987, N & W commenced the present action requesting declaratory and injunctive relief. Presently before the Court are cross motions for summary judgment which present the question of whether or not Ohio's attempt to regulate walkways on railroad bridges is subject to federal preemption.

In *CSX Transportation v. Public Utilities Commission of Ohio*, 701 F.Supp. 608 (S.D.Ohio 1988), this court discussed federal preemption in a context similar to the present case. The following excerpts from that decision are equally pertinent here:

In 1970 Congress enacted the Federal Railroad Safety Act (FRSA), 45 U.S.C. § 421 *et seq.* which authorized the Secretary of the Department of Transportation to adopt railroad safety regulations. Congress included in the act broad preemption provisions excluding the states from legislating in any area of railroad safety already covered by regulations adopted by the Secretary....

*Id.,* at 609.

This court then stated, *Id.* at 610–611:

The United States Supreme Court has recently summarized the various tests enunciated for determining whether federal law has preempted state legislation:

The Supremacy Clause of Art. VI of the Constitution provides Congress with the power to pre-empt state law. Preemption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law. *Jones v. Rath Packing Co.,* 430 U.S. 519, [97 S.Ct. 1305, 51 L.Ed.2d 604] (1977), when there is outright or actual conflict between federal and state law, *e.g., Free v. Bland,* 369 U.S. 663, [82 S.Ct. 1089, 8 L.Ed.2d 180] (1962), where compliance with both federal and state law is in effect physically impossible, *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132 [83 S.Ct. 1210, 10 L.Ed.2d 248] (1963), where there is implicit in federal law a barrier to state regulation, *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85 [, 103 S.Ct. 2890, 77 L.Ed.2d 490] (1983), where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218 [67 S.Ct. 1146, 91 L.Ed. 1447] (1947), or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress. *Hines v. Davidowitz,* 312 U.S. 52 [, 61 S.Ct. 399, 85 L.Ed. 581] (1941). Pre-emption may result not only from action taken by Congress itself; a federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation. *Fidelity Federal Savings & Loan Assn. v. De la Cuesta,* 458 U.S. 141 [, 102 S.Ct. 3014, 73 L.Ed.2d 664] (1982); *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691 [, 104 S.Ct. 2694, 81 L.Ed.2d 580] (1984).

*Louisiana Public Service Commission v. FCC,* 476 U.S. 355, 358–369, 106 S.Ct. 1890, 1898–99, 90 L.Ed.2d 369 (1986).

At the heart of each of these standards is the discernment of the true purpose of Congress. "The critical question in any pre-emption analysis is always whether Congress intended that federal regulation supersede state law." *Louisiana Public Service Commission,* 476 U.S. at 369, 106 S.Ct. at 1899.

The stated purpose of the FRSA is "to promote safety in all areas of railroad operations." 45 U.S.C. § 421 et seq. The Act requires the Secretary of Transportation to prescribe appropriate rules, regulations, orders and standards for all areas of railroad safety and to conduct research, development, testing, evaluation and training in all areas of railroad safety. In 45 U.S.C. § 434 Congress declared its intention that laws, rules, regulations, orders and standards relating to railroad safety should be nationally uniform to the extent practicable. The statute reads as follows:

The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard re-

lating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce.

Thus, under 45 U.S.C. § 434, a state may legislate in areas relating to railroad safety only until such time as the Secretary has adopted a rule, regulation, order or standard covering the same subject matter. A state, within limitations, may adopt an additional or more stringent rule only when necessary to address a local safety hazard. This exception does not apply to this case.

This court then went on to note, *Id.* at 612–613:

The legislative history of the FRSA evidences a clear Congressional intent that rail safety regulations be nationally uniform and that all enforcement should be by federal authorities.

With exception of industrial or plant railroads, the railroad industry has very few local characteristics. Rather, in terms of its operations, it has a truly interstate character calling for a uniform body of regulations and enforcement. It is a national system.... In addition to the obvious areas of rolling stock and employees, such elements as operating rules, signal systems, power supply systems, and communication systems of a single company normally cross many State lines. To subject a carrier to enforcement before a number of different State administrative and judicial systems in several areas of operation could well result in an undue burden on interstate commerce.

H.R.Rep. No. 1194, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Admin. News 4104, 4110–4111.

The Committee does not believe that safety in Nation's railroads would be advanced sufficiently by subjecting the national rail system to a variety of enforcement in 50 different judicial and administrative systems. Accordingly, while it has preserved the framework of certification, it has modified

the concept insofar as it applies to the nation's rail system to make all enforcement Federal in nature. The Secretary will have exclusive authority to assess and compromise penalties and to recommend court action for recovery of such penalties ... [States] will have no authority to assess and compromise penalties or to seek State judicial action.

*Id.* at 4109.

The scope of preemption under the FRSA has been broadly construed by the courts. *See National Association of Regulatory Utility Commissioners v. Coleman,* 542 F.2d 11 (3d Cir.1976); *Chesapeake & Ohio Railway Co. v. City of Bridgman,* 669 F.Supp. 823, 825 (W.D. Mich.1987); *Consolidated Rail Corp. v. Pennsylvania Public Utility Commission,* 536 F.Supp. 653 (E.D.Pa.), *aff'd mem.,* 696 F.2d 981 (3rd Cir.1982), *aff'd mem.,* 461 U.S. 912, 103 S.Ct. 1888, 77 L.Ed.2d 280 (1983); *Missouri Pacific Railroad Co. v. Railroad Commission of Texas,* 671 F.Supp. 466 (W.D.Tex. 1987), *aff'd,* 850 F.2d 264 (5th Cir.1988).

\* \* \* \* \* \*

The legislative history of the FRSA shows that the issue of federal preemption was vigorously debated, leaving a clear record of Congressional intent for virtually complete federal preemption in the area of railroad safety laws.

The Secretary has not acted affirmatively pursuant to the congressional grant of power under the FRSA to enact any regulations with respect to walkways on railroad bridges and trestles. However, the United States Supreme Court has recognized a form of negative preemption where a federal agency vested with the authority to regulate has determined that no regulation is appropriate. In *Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 178, 98 S.Ct. 988, 1004–05, 55 L.Ed.2d 179 (1978) the Court said:

The Court has previously recognized that "where failure of ... federal officials affirmatively to exercise their full authority takes on the character of a ruling

that no such regulation is appropriate or approved pursuant to the policy of the statute," States are not permitted to use their police power to enact such a regulation. *Bethlehem Steel Co. v. New York State Labor Relations Board*, 330 U.S. 767, 774 [67 S.Ct. 1026, 1030, 91 L.Ed. 1234] (1947); *Napier v. Atlantic Coast Line R. Co.*, 272 U.S. 605 [47 S.Ct. 207, 71 L.Ed. 432] (1926).

*See also Burlington Northern Railroad Co. v. State of Montana*, 880 F.2d 1104, 1107 (9th Cir.1989) ("[T]he FRA's rejection, like adoption, of particular safety regulations may preempt state regulations on the same subject matter."); *Marshall v. Burlington Northern, Inc.*, 720 F.2d 1149 (9th Cir.1983).

In November, 1976, the Secretary's delegee, the Federal Railroad Administration (FRA) published an Advance Notice of Proposed Rulemaking, stating that it was studying the need for a federal regulation requiring the construction of walkways on railroad bridges, trestles and similar structures. 41 Fed.Reg. 50,302 (1976). This rulemaking proceeding was terminated in April, 1977 when the FRA concluded:

the issuance of a Federal rule requiring walkways on railroad bridges, trestles, and similar structures cannot be justified at the present time. First, any such rule would impose significant added burdens in terms of the large dollar cost to the railroad industry for construction of the walkways, the added hazard to persons and property and additional liability exposure for the railroads because of increased trespassing, and the possible decrease in overall railroad safety because of the diversion of resources from other maintenance and improvement projects. Secondly, neither the commenters nor the FRA has been able to demonstrate that such a rule would result in a definite or measurable improvement to railroad employee safety. Finally, if an employee safety problem does exist because of the lack of walkways in a particular area or on a particular structure, regulation by a State agency that is in a better position

to assess the local need is the more appropriate response.

42 Fed.Reg. 22185 (1977).

A year later the FRA reiterated these conclusions:

FRA has affirmatively determined that issuance of Federal regulations governing walkways on bridges is not warranted based on the projected cost of installation and the collateral safety problems which would be created.

43 Fed.Reg. 10586 (March 14, 1978).

Finally, in 1978, the FRA issued a statement indicating which aspects of the railroad industry fall under its exclusive jurisdiction thereby displacing applicable OSHA regulations:

OSHA regulations would not apply to ladders, platforms, and other surfaces on signal masts, cantenary systems, railroad bridges, turntables, and similar structures or to walkways beside the tracks in yards or along the right-of-way. These are areas which are so much a part of the operating environment that they must be regulated by the agency with primary responsibility for railroad safety.

43 Fed.Reg. 10587 (1978).

This Court concludes that these actions by the FRA bring this case within the rule of negative preemption. The FRA has affirmatively determined that regulations requiring the construction of walkways on railroad bridges and trestles are not warranted. "[I]f after due consideration the FRA determines that a particular regulation is not justified, that determination has the same preclusive effect as the adoption of a regulation." *Southern Pacific Transportation Co. v. PUCO of California*, 647 F.Supp. 1220, 1226 (N.D.Cal.1986).

Defendant contends, however, that a June, 1988 amendment to the FRSA enacted changes this result. The amendment reads:

The Secretary shall within one year after June 22, 1988 issue such rules, regulations, orders, and standards as may be necessary for the safety of maintenance-of-way employees, including standards for bridge safety equipment, such as

nets, walkways, handrails, and safety lines, and requirements relating to instances when boats shall be used.

45 U.S.C. § 431(n).

There is no evidence before the Court regarding what action, if any, the Secretary has taken in response to this statutory amendment, but the Federal Register is devoid of any reference to a rulemaking proceeding or a rule on this subject since the amendment.

Defendant contends that this amendment negates federal preemption of the regulation of walkways on railroad bridges. Defendant argues that the amendment signifies that "Congress has expressly refused to sanction the decision of the FRA that the regulation of walkways on railroad bridges is unnecessary or inappropriate", and that the amendment signifies that Congress "found that the subject matter had not been 'covered' by federal requirements ..." (Defendants' motion for partial summary judgment, page 16). This Court concludes, however, that the amendment serves only to reinforce federal preemption in the area of bridge safety equipment, inasmuch as it expressly confirms the Secretary's jurisdiction in this area and gives the states no role whatsoever.

Defendant characterizes the amendment as a congressional mandate to the FRA to adopt regulations requiring walkways on railroad bridges and trestles and then argues that the Secretary's failure to meet the June 22, 1989 deadline throws the matter open to state regulation. This Court disagrees with both branches of that argument. First of all, the amendment does not require the Secretary to take any specific action but instead requires him to issue only such rules "as may be necessary for the safety of maintenance-of-way employees." Although comments made by the senator who introduced this amendment (former Secretary of Transportation Adams) suggest that he may have intended that it require the FRA to issue standards [see 133 Cong.Rec. S15904 (daily ed. Nov. 5, 1987)] the literal language of the amendment does not do so. Instead it leaves the matter within the discretion of the FRA.

Even if the amendment were construed as a mandate, the nature of the regulations is left entirely up to the FRA and there is no requirement that such regulations include walkways. Walkways are mentioned only in the context of various standards for bridge safety equipment which include nets, handrails and safety lines. Finally, even if the amendment is viewed as a mandate, it does not follow that the FRA's failure to act within the time specified in the amendment operates to relegate regulation to the states contrary to the overriding intent of the FRSA. The amendment makes no such provision and nothing in the legislative history suggests that Congress so intended.

The Court concludes that state regulation of walkways on railroad bridges and trestles is preempted by the FRSA, that § 4901:3-1-05(D) of the Ohio Administrative Code violates the Supremacy Clause of the United States Constitution (Art. VI, Cl. 2) and that the plaintiff is entitled to the relief prayed for in the complaint. Plaintiff shall tender a proposed order in accordance with this memorandum opinion.

It is so ORDERED.