**NORFOLK & WESTERN RAILWAY COMPANY, Plaintiff–Appellee,**

v.

**The PUBLIC UTILITIES COMMISSION OF OHIO, Defendant–Appellant.**

No. 90–3113.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 9, 1990.

Decided Feb. 27, 1991.

Rehearing and Rehearing En Banc Denied April 12, 1991.

---

Daniel A. Brown (argued), Diane C. Reichwein, Paula J. Lloyd, Porter, Wright, Morris & Arthur, Columbus, Ohio, for plaintiff-appellee.

Robert S. Tongren, James B. Gainer (argued), William L. Wright, Asst. Atty. Gen., Public Utilities Section, Columbus, Ohio, for defendant-appellant.

Charles D. Gray, Washington, D.C., for National Ass'n of Regulatory Utility Comr's, amicus curiae.

Lawrence M. Mann, Alper & Mann, Christopher B. Little, Washington, D.C., for Railway Labor Executives, amicus curiae.

John T. Rich, Shea & Gardner, Washington, D.C., for Ohio R.R. Ass'n and The Ass'n of American Railroads, amicus curiae.

Before JONES, RYAN and BOGGS, Circuit Judges.

RYAN, Circuit Judge.

The Public Utilities Commission of Ohio ("PUCO"), appeals the judgment of the district court enjoining it from requiring the Norfolk & Western Railway Company

("the railroad") to maintain or otherwise provide a walkway upon any of its railroad bridges or trestles.

We are presented with the following issues:

— Whether the district court correctly held that the Federal Railroad Safety Act, 45 U.S.C. § 421, *et seq.*, preempts Ohio Administrative Rule 4901:3–1–05(D); and

— Whether the district court properly exercised jurisdiction in this case.

We find that the district court correctly concluded that Rule 4901:3–1–05(D) is preempted by 45 U.S.C. § 434, and properly exercised jurisdiction in this case.

This case presents interesting issues of federal preemption and judicial abstention, in the following context:

## I.

Norfolk & Western is an interstate rail carrier which owns and operates railroad bridges in the State of Ohio. In March 1987, PUCO ordered the railroad to provide walkways and railings for trainmen along at least one side of two of its bridges, one located in Medina, Ohio, and the other in Akron, Ohio. This order was based upon Ohio Administrative Code § 4901:3–1–05(D) which provides that: "A suitable walk or railing from which trainmen may walk shall be provided along at least one side of all bridges and coal, ore, or other trestles."

On June 23, 1987, the railroad filed this action requesting declaratory and injunctive relief. The district court found that Rule 4901:3–1–05(D) was subject to federal preemption. It granted the railroad summary judgment and enjoined PUCO from enforcing Administrative Rule 4901:3–1–05(D). *Norfolk & W. Ry. v. Public Util. Comm'n of Ohio*, 727 F.Supp. 367 (S.D. Ohio 1990).

PUCO appeals the summary judgment claiming that because the Federal Railroad Administration ("FRA") has violated 45 U.S.C. § 431(n) by failing to mandate railroad bridge walkways, the states are permitted to implement policies requiring walkways on bridges. Norfolk & Western contends, however, that the doctrine of negative preemption applies because the FRA has "covered" the subject matter in explicitly and affirmatively choosing not to mandate such walkways. Moreover, the railroad argues, section 431(n) reinforces the FRA's exclusive authority to "cover" the area of walkways on railroad bridges.

## II.

### A. Preemption

We review a grant of summary judgment *de novo. Burkart v. Post–Browning, Inc.*, 859 F.2d 1245, 1249 (6th Cir.1988). A party moving for summary judgment is "entitled to judgment as a matter of law" when there is "no genuine issue as to any material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In *Louisiana Public Serv. Comm'n v. FCC*, 476 U.S. 355, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986), the Supreme Court summarized the various tests for determining whether federal law has preempted state legislation:

The Supremacy Clause of Art VI of the Constitution provides Congress with the power to pre-empt state law. Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, when there is outright or actual conflict between federal and state law, where compliance with both federal and state law is in effect physically impossible, where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.

*Id.* at 368–69, 106 S.Ct. at 1898 (citations omitted).

The Court has stated that "[p]re-emption may result not only from action taken by Congress itself; a federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation." *Id.* at 369, 106 S.Ct. at 1899. "The critical question in any pre-emption analysis is always whether Congress intended that federal regulation supersede state law." *Id.*

The Federal Railroad Safety Act ("Act"), 45 U.S.C. § 421, *et seq.*, authorizes the Secretary of Transportation to adopt railroad safety regulations. One of the purposes of the Act is "to promote safety in all areas of railroad operations." 45 U.S.C. § 421. The Act includes a broad preemption provision excluding the states from legislating in any area of railroad safety already "covered" by the regulations adopted by the secretary. 45 U.S.C. § 434.

Section 434 mandates that all laws and standards relating to railroad safety must be nationally uniform. It provides:

§ 434. National uniformity of laws, rules, regulations, orders, and standards relating to railroad safety; State regulation

The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce.

Thus, the Act preempts individual state regulation except in two circumstances: 1) a state may regulate railroad safety until the FRA has covered the subject matter, and 2) a state may impose a more stringent safety requirement only when necessary to eliminate an essentially local safety hazard.

1.

■ PUCO argues that its Rule 4901:3–1–05(D) is within the first exception of section 434 because the FRA has not "covered" the subject matter of walkways on railroad bridges; it has promulgated no regulation mandating bridge walkways and indeed, in 1977, explicitly declined to do so. Relying upon the same 1977 FRA pronouncement, the railroad responds that the agency's explicit refusal to adopt a regulation requiring railroad bridge walkways was a determination that a regulation requiring bridge walkways was not appropriate, and thus amounted to negative preemption. We agree.

The United States Supreme Court has recognized a form of negative preemption when a federal agency has determined that no regulation is appropriate. *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 178, 98 S.Ct. 988, 1004–05, 55 L.Ed.2d 179 (1978). In *Ray*, the Court held that " 'where failure of … federal officials affirmatively to exercise their full authority takes on the character of a ruling that no such regulation is appropriate or approved pursuant to the policy of the statute,' States are not permitted to use their police power to enact such regulation." *Id.* (citation omitted).

In the referenced 1977 FRA statement, the FRA directly addressed the issue of railroad bridge walkways and decided that a general bridge walkway requirement was not necessary. The FRA stated:

[T]he issuance of a Federal rule requiring walkways on railroad bridges, trestles, and similar structures cannot be justified at the present time. First, any such rule would impose significant added burdens in terms of the large dollar cost to the railroad industry for construction of the walkways, the added hazard to persons and property and additional liability exposure for the railroads because of increased trespassing, and the possible

decrease in overall railroad safety because of the diversion of resources from other maintenance and improvement projects. Secondly, neither the commenters nor the FRA has been able to demonstrate that such a rule would result in a definite or measurable improvement to railroad employee safety. Finally, if an employee safety problem does exist because of the lack of walkways in a particular area or on a particular structure, regulation by a State agency that is in a better position to assess the local need is the more appropriate response....

42 Fed.Reg. 22185 (May 2, 1977).

Moreover, the FRA reiterated these conclusions when it terminated rulemaking proceedings with respect to Railroad Occupational Safety and Health Standards in 1978:

FRA has exercised and continues to exercise its jurisdiction over the safety of railroad operations.... FRA has affirmatively determined that issuance of Federal regulations governing walkways on bridges is not warranted based on the projected cost of installation and the collateral safety problems which would be created.

43 Fed.Reg. 10586 (March 14, 1978).

Additionally, section 431(n) reenforces the FRA's exclusive authority in such matters. Section 431(n) provides:

(n) Maintenance-of-way operations

The Secretary shall, within one year after June 22, 1988, issue such rules, regulations, orders, and standards *as may be necessary* for the safety of maintenance-of-way employees, including standards for bridge safety equipment, such as nets, walkways, handrails, and safety lines, and requirements relating to instances when boats shall be used.

45 U.S.C. § 431(n) (Supp.1990) (emphasis supplied). Section 431(n) supports federal preemption in the area of bridge walkways, because it confirms the secretary's jurisdiction in this area and leaves the states no role whatsoever. Although PUCO characterizes section 431(n) as a congressional mandate to the FRA to require walkways on all railroad bridges, we think the plain language of section 431(n) leaves the decision whether to require bridge walkways to the discretion of the FRA.

The district court concluded that the FRA's deliberate refusal to require walkways for the reasons given brought this case within the rule of negative preemption. The court found that the "FRA has affirmatively determined that regulations requiring the construction of walkways on railroad bridges and trestles are not warranted." *Norfolk & Western,* 727 F.Supp. at 370. We agree with this conclusion and find that Rule 4901:3-1-05(D) is negatively preempted because the FRA has "covered" the subject matter.

### 2.

Moreover, Rule 4901:3-1-05(D) does not fit within the second exception of 45 U.S.C. § 434 which permits state regulation only when local situations are "not capable of being adequately encompassed within uniform national standards." H.R. Rep. No. 1194, 91st Cong., 2d Sess., reprinted in 1970 U.S.Code Cong. & Admin. News 4104, 4117. The legislative history of section 434 provides that:

The States will retain authority to regulate individual local problems where necessary to eliminate or reduce essentially local railroad safety hazards. Since these local hazards would *not be statewide in character,* there is no intent to permit a State to establish Statewide standards superimposed on national standards covering the same subject matter.

*Id.* at 4117 (emphasis added).

Manifestly, this "local safety hazard" exception cannot be applied to uphold the application of a statewide rule. *National Ass'n of Regulatory Util. Comm'rs v. Coleman,* 542 F.2d 11, 13 (3d Cir.1976).

Ohio's Rule 4901:3-1-05(D) requires that "a suitable walk or railing from which trainmen may walk shall be provided along at least one side of *all* bridges and coal, ore, or other trestles." PUCO has never disputed the statewide application of this rule. On its face, the rule does not allow for any determinations of a local hazard and is explicitly inconsistent with the defi-

nition of a local safety hazard. Because Rule 4901:3–1–05(D) has statewide application, it is not within with the second exception under 45 U.S.C. § 434.

We conclude, therefore, that Ohio's regulation concerning walkways on railway bridges and trestles is preempted by 45 U.S.C. § 434. The FRA has purposefully declined to implement a national regulation requiring railroad walkways on bridges. Thus, PUCO is preempted from issuing such a regulation.

### B. Abstention

PUCO claims the lower court should have abstained from exercising jurisdiction in this case because there is an ongoing state proceeding and, that being so, the railroad has failed to exhaust its state remedies. Therefore, PUCO contends, abstention is mandated pursuant to *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). However, we find this claim to be meritless.

■ This court has held that abstention pursuant to *Younger* is appropriate only when a court can answer the following three questions affirmatively: 1) do the relevant state proceedings "constitute an ongoing state judicial proceeding;" 2) do the proceedings "implicate important state interests;" and 3) is there "an adequate opportunity in the state proceedings to raise constitutional challenges." *CSXT, Inc. v. Pitz,* 883 F.2d 468, 474 (6th Cir.1989) (quoting *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982)), *cert. denied,* — U.S. ——, 110 S.Ct. 1480, 108 L.Ed.2d 616 (1990).

The first prerequisite of *Younger* abstention is that the state proceeding must be an ongoing or pending judicial proceeding. *New Orleans Pub. Serv., Inc. v. New Orleans,* 491 U.S. 350, 109 S.Ct. 2506, 2518–19, 105 L.Ed.2d 298 (1989) ("NOPSI"). However, "when no state proceeding is pending, and considerations of equity, comity, and federalism are therefore diminished, a federal court may consider constitutional challenges to state statutes and grant declaratory and injunctive relief."

*WXYZ, Inc. v. Hand,* 658 F.2d 420, 423 (6th Cir.1981) (citing *Wooley v. Maynard,* 430 U.S. 705, 710–11, 97 S.Ct. 1428, 1432–34, 51 L.Ed.2d 752 (1977)).

■ PUCO contends that the state action in this case is still "pending" because the railroad did not exhaust its right of appeal of PUCO's order. However, we think there was no "ongoing" or "pending" proceeding at the time the railroad filed suit in the district court. PUCO conducted an administrative hearing and concluded that the railroad was in violation of Rule 4901:3–1–05(D). That was the end of the matter and no further administrative proceedings were contemplated or appeals available to the railroad short of resort to judicial review. The Fifth Circuit has held that a state administrative enforcement proceeding is no longer pending when the agency proceeding has been completed, notwithstanding the availability of state appellate review. As the Fifth Circuit explained:

> [T]he Supreme Court [has] found abstention during the pendency of state administrative proceedings proper. Such deference, however, is no longer due when the administrative proceedings have ended. The mere availability of state judicial review of state administrative proceedings does not amount to the pendency of state judicial proceedings....

*Thomas v. Texas State Bd. of Medical Examiners,* 807 F.2d 453, 456 (5th Cir. 1987). *Cf. Alleghany Corp. v. McCartney,* 896 F.2d 1138 (8th Cir.1990).

This court has acknowledged the distinction between a case wherein a plaintiff seeks to enjoin an ongoing administrative hearing and one wherein a plaintiff seeks judicial relief from the final order of a state agency. *Watts v. Burkart,* 854 F.2d 839, 849 (6th Cir.1988).

In *Watts,* this court distinguished *Thomas* because the *Watts* administrative proceedings had been suspended rather than concluded; therefore, *Younger* abstention was appropriate. This case is more similar to *Thomas* than to *Watts.* Here, there was and is no state proceeding pending. The

administrative hearing has concluded and the agency has issued its final order. The order has not been appealed to the Ohio Supreme Court. Thus, *Younger* abstention is inappropriate.

PUCO argues that the Supreme Court in *NOPSI*, and this court in *Pitz*, decided the abstention issue in the agency's favor. However, this claim is without merit. In *NOPSI*, the Supreme Court did not address the issue of the application of the abstention doctrine to a pending or ongoing state administrative proceeding or whether such a proceeding is pending when there has been no request for judicial review. *NOPSI*, 109 S.Ct. at 2519 n. 4. Similarly, *Pitz* is distinguishable because, in *Pitz*, there was no question that the state administrative proceeding was pending. In *Pitz*, this court applied *Younger* abstention because the plaintiff railroad had attempted to enjoin the Michigan Department of Transportation from conducting a hearing in order to assess whether the railroad was in violation of a state rule requiring "adequate toilet facilities" for "trainmen, enginemen, and yardmen." *Pitz*, 883 F.2d at 470. In this case, the agency has already conducted a hearing and issued its final order.

Moreover, abstention is not required when "the naked question, uncomplicated by [ambiguous language]," is whether the state law on its face is preempted. *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 236-37, 104 S.Ct. 2321, 2326-28, 81 L.Ed.2d 186 (1984). Similarly, "facially conclusive" claims of federal preemption may be sufficient to support federal jurisdiction in a case in which abstention would otherwise be appropriate under *Younger*. *NOPSI*, 109 S.Ct. at 2517. Thus, *NOPSI* suggests that a federal court could hear a case to interpret the preemptive federal law without making any factual findings.

Resolution of the issue whether Ohio Administrative Rule 4901:3-1-05(d) is preempted by 45 U.S.C. § 434 because the FRA had covered the subject matter by considering and declining to issue a federal regulation did not require the district court to *interpret* the rule as a matter of state law. The only issue before the district court was whether or not the FRA, in 1977 and 1978, had "covered the issue."

Because this case presents a facially conclusive challenge to Rule 4901:3-1-05(D) and does not involve interpreting state law or making findings on disputed facts, the considerations that require abstention are not present. Rule 4901:3-1-05(D), on its face, is preempted and abstention is not required. Thus, we find that the lower court did not err in exercising jurisdiction in this case.

### III.

The district court's decision finding that Ohio Administrative Rule 4901:3-1-05(D) is preempted by 45 U.S.C. § 434 is AFFIRMED.