Murphy v. City of Manchester        CV-98-541-B   09/17/99  P

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Gregory J. Murphy</u>

    **v.**                          Civil No. C-98-541-B

<u>City of Manchester, et al.</u>


<u>**MEMORANDUM AND ORDER**</u>


    Gregory Murphy has filed a federal court complaint charging that the Manchester Police Department and several of its employees violated his First, Sixth, and Fourteenth Amendment rights when they removed him from his position as a patrol officer.  He also asserts various state law claims.  In this order, I explain why I must dismiss Murphy's claims for injunctive relief and stay his claims for damages based upon the abstention doctrine announced in <u>Younger v. Harris</u>, 401 U.S. 37 (1971).


I.

    Murphy has been employed as a patrol officer by the Manchester Police Department for approximately 15 years.  At all

relevant times, he also served as president of the Manchester Police Patrolman's Association.  On or about September 25, 1998, Murphy was notified that he was being charged with five separate violations of the police department's rules and regulations.  The police department subsequently dropped one of the charges.  The remaining four charges all stem from Murphy's union-related activities, including an editorial he wrote for the July edition of the union's newsletter and remarks he made to new recruits at the invitation of the police department.[1]  On both occasions, Murphy referred to certain Manchester police officers who had crossed a picket line during a 1997 contract dispute as "scabs," and urged other officers not to embrace them as "brother officers."  In accordance with the police department's regulations, Murphy could either admit his guilt and accept summary punishment from the chief of police or contest the charges in a hearing before the department's disciplinary board. Murphy chose the second option, and a hearing was scheduled for October 27, 1998.

---

[1]  The four remaining charges consisted of two counts of "disobedience or violation of [a] department regulation, rule, order, instruction, or memorandum," one count of "conduct unbecoming an officer," and one count of an "act or omission contrary to good order and discipline."  Pl. Mot. for Temp. Rest. Order and Prelim. Inj. ¶ 11 at 5 (Doc. 8).

The police department's regulations authorize the police chief to appoint the members of the disciplinary board. The board is composed of a police commissioner, an individual serving as the chief's designee, and a patrol officer or superior officer chosen from a list of approved individuals presented to the chief by the various bargaining bodies. See Manchester Police Department Rules and Regulations and/or Standard Operating Procedures ("MPD-SOP") at A-19-11, A-19-12. The board must hold a hearing on a formal charge. See id. at A-19-15. If the officer is found guilty, the board must then make a written recommendation to the police chief concerning appropriate discipline. See id. Officers appearing before the board are entitled to be represented by counsel. See id. at A-19-11. Although proceedings before the board are not governed by formal rules of evidence, officers may present evidence, cross-examine witnesses, and otherwise challenge the police department's case. See id.

Murphy filed a pre-hearing motion seeking to disqualify Police Chief Mark Driscoll from participating in the disciplinary process. See Pl. Mot. for Temp. Rest. Order and Prelim. Inj. Ex. H (Doc. 8). Murphy alleged that Chief Driscoll could not participate because he had initiated the charges against Murphy

and, therefore, was biased against him.  See id.  Murphy also moved to recuse the police chief's designee to the board, Lieutenant Thomas Steinmetz, because Steinmetz's appointment allegedly violated a department regulation prohibiting a "[s]uperior [o]fficer of the bargaining body" from serving on a disciplinary board that is considering charges against a police officer.  See Pl. Mot. for Temp. Rest. Order and Prelim. Inj. Ex. K (Doc. 8) (quoting MPD-SOP at A-19-12(F)).  Finally, Murphy attempted to have the city solicitor's office barred from providing legal advice to the board because the city solicitor had represented the police department in litigation against the patrolman's association.  See Pl. Mot. for Temp. Rest. Order and Prelim. Inj. Ex. J (Doc. 8).  The board denied all three motions and rejected Murphy's motions to reconsider.

Shortly after the hearing began, Steinmetz ordered one of Murphy's attorneys removed for inappropriate behavior.  Murphy subsequently appeared without counsel, refused to examine any witnesses, and declined to present a defense.  On November 19, 1998, the board found him guilty of each of the four charges.  It also recommended that he be suspended without pay for six months.  Chief Driscoll accepted the disciplinary board's findings.  He proposed to punish Murphy by:  (1) suspending him without pay for

-4-

six months; (2) requiring him to agree to refrain from "any future conduct of the type described in the charges;" (3) requiring him to agree that "any such future conduct will result in his termination;" and (4) requiring him to apologize for his misconduct. Murphy was terminated when he refused to accept the proposed discipline.

Murphy has a right to appeal the police chief's ruling to the Manchester Police Commission. See MPD-SOP at A-19-15(G). If an appeal is taken, the commission must review the record and determine whether to receive any additional evidence. See id. at A-19-15, A-19-16. It then must determine *de novo* whether the officer is guilty of the charged misconduct and whether the discipline ordered by the police chief should be imposed. See id. at A-19-16. Murphy may seek judicial review of a police commission ruling by filing a petition for writ of certorari in superior court. See id. at A-19-16(H) (providing that an aggrieved officer may appeal to superior court); Kelley v. City of Manchester, No. 94-E-170, slip op. at 2-3 (Hillsborough SS. N. Dist. Jan. 29, 1995) (specifying that review of a police commission's ruling is by writ of certiorari). Alternatively, because Murphy claims that the disciplinary proceedings interfere with protected union activities, he may challenge the police

chief's order in an arbitration proceeding and appeal an adverse ruling to the Public Employees' Labor Relations Board ("PELRB"). See N.H. Rev. Stat. Ann. § 273-A:6 (1987). He also has a right to appeal an adverse PELRB ruling to the New Hampshire Supreme Court. See N.H. Rev. Stat. Ann. § 273-A:14 (1987). Murphy has not invoked his right to arbitration. Nor has he yet sought review of Chief Driscoll's decision by the police commission.

Murphy filed his federal court complaint one day before the police department commenced formal disciplinary proceedings against him. Murphy's complaint charges that Chief Driscoll's termination order violates his First Amendment right to engage in protected speech, his Fourteenth Amendment rights to substantive and procedural due process,[2] and his Sixth Amendment right to counsel. The complaint also asserts several state law causes of action. Murphy seeks both injunctive relief and damages.

## II.

In <u>Younger v. Harris</u>, the United States Supreme Court,

---

[2] Murphy asserts that his rights to due process are based on the Fifth Amendment. Since the Fifth Amendment does not apply directly to state and local officials acting under color of state law, however, I assume that Murphy intended to base his claims on the Fourteenth Amendment.

citing considerations of comity, federalism, and equity, held that federal courts may not "stay or enjoin pending state court [criminal] proceedings except under special circumstances." 401 U.S. at 41. The Court has expanded the Younger abstention doctrine in recent years and applied it to cases involving certain civil judicial proceedings and administrative quasi-judicial proceedings. See, e.g., Huffman v. Pursue, Ltd., 420 U.S. 592, 594, 604-05 (1975); Trainor v. Hernandez, 431 U.S. 434, 444, 446 (1977); Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982); Ohio Civil Rights

Comm'n v. Dayton Christian Schools, Inc., 477 U.S. 619, 627-28 (1986); Pennzoil Co. v. Texaco Inc., 481 U.S. 1, 11 (1987).

The Court has developed a four-part test, consisting of three requirements and one exception, to determine whether the Younger abstention doctrine applies in a particular case. First, the federal case must affect pending state judicial proceedings. See, e.g., Middlesex County, 457 U.S. at 432. Second, the proceedings must implicate important state interests. See id. Third, the state proceedings must afford the federal plaintiff adequate opportunity to raise any constitutional claims. See id. If each of these requirements is satisfied, abstention is required unless the federal plaintiff establishes that the state proceedings are tainted by bad faith, harassment, or some other extraordinary circumstance. See id. at 437; see also Younger, 401 U.S. at 53-4. I review Murphy's federal complaint in light of these four elements.

A.    **The First Younger Requirement: Pending Judicial Proceedings**

Murphy concedes that the disciplinary proceedings qualify as "judicial proceedings" for purposes of the Younger abstention doctrine. See Pl. Mem. at 4 (Doc. 17). He nevertheless argues that the proceedings cannot be deemed to be "pending" because they were not commenced until after he filed his federal court

complaint and because he has not yet chosen to appeal the termination order to the police commission.  I examine each argument in turn.

### 1. State proceedings commenced after the federal complaint was filed.

The Supreme Court has determined that a state proceeding commenced after a federal complaint has been filed nevertheless will be deemed to be "pending" for purposes of the Younger abstention doctrine if no substantive actions concerning the merits have occurred in the federal case prior to initiation of the state proceeding.  See Hicks v. Miranda, 422 U.S. 332, 349 (1975).  In this case, the police department started the disciplinary process before any substantive actions occurred in the federal case.  Accordingly, the disciplinary proceedings are deemed to be "pending" for purposes of Younger abstention even though they began after the federal complaint was filed.

### 2. State proceedings where an available administrative appeal has not yet been taken.

Murphy argues that the relief he seeks would not disrupt a "pending" state proceeding because Chief Driscoll has issued his termination order and Murphy has not appealed the order to the police commission.  I disagree.

In Patsy v. Board of Regents, 457 U.S. 496 (1982), the Supreme Court held that a federal plaintiff need not exhaust administrative remedies before asserting a claim in federal court for relief based on 42 U.S.C. § 1983. See id. at 516. If the scope of this ruling had not been limited by a more recent Supreme Court decision, Murphy might well have argued that it authorized him to bypass the disciplinary hearing process entirely by filing suit in federal court. This argument is foreclosed, however, by the Court's decision Dayton Christian Schools, which specifies that Patsy is inapplicable to administrative proceedings that "are coercive rather than remedial, began before any substantial advancement in the federal action took place, and involve an important state interest." 477 U.S. at 627-28 n.2; see also Kercado-Melendez v. Aponte-Roque, 829 F.2d 255, 261 (1st Cir. 1987) ("[T]here is a significant difference between a civil rights plaintiff who seeks to use the federal courts to stop or nullify an ongoing state proceeding in which she is a defendant, and a civil rights plaintiff who has an option to initiate a state proceeding to remedy a constitutional wrong perpetrated by a state actor. In the former case, abstention is appropriate; in the latter, the Patsy rule prevails.").

The record in this case establishes that the police department's disciplinary proceedings are precisely the type of coercive administrative proceedings to which the Younger doctrine was intended to apply. The police department commenced the proceedings by issuing a complaint charging Murphy with misconduct. Punishment was not imposed until after he had been found guilty of the charged misconduct in an adversary hearing. Murphy was not given a choice as to whether he wanted to participate in the hearing. Instead, he could have avoided the hearing only by admitting his guilt and accepting summary punishment. Under these circumstances, Patsy provides no support for Murphy's attempt to bypass the disciplinary hearing process.[3]

_____

[3] The First Circuit applied Patsy to permit a plaintiff to bypass state administrative proceedings in Kercardo-Melendez v. Aponte-Roque. The present case, however, differs from Kercado-Melendez in two material respects. First, as the court recognized in Kercado-Melendez, the plaintiff in that case was given the option of initiating administrative proceedings to challenge a notice effectively discharging her for her position as superintendent of schools. See 829 F.2d at 261. Here, in contrast, the administrative proceedings were initiated by the police department to determine whether disciplinary action was warranted. Second, the plaintiff in Kercardo-Melendez did not challenge the legality of the administrative hearing process. See id. This fact was important to the court's ruling because, as the court noted, the comity and federalism concerns underlying the Younger doctrine are more directly implicated by a challenge to the legality of a state judicial proceeding. See id. In this case, unlike in Kercardo-Melendez, Murphy directly challenged the legitimacy of the administrative proceedings that led to his

Murphy's contention that the _Younger_ doctrine is inapplicable because the administrative proceedings ended when he declined to appeal the police chief's termination order also lacks merit. In rejecting a similar argument made by a plaintiff who had challenged a state trial court ruling by filing suit in federal court rather than pursuing an appeal in state court, the Supreme Court stated,

> [v]irtually all of the evils at which _Younger_ is directed would inhere in federal intervention prior to completion of state appellate proceedings, just as surely as they would if such intervention occurred at or before trial. Intervention at the later stage is if anything more highly duplicative, since an entire trial has already taken place, and it is also a direct aspersion on the capabilities and good faith of state appellate courts. Nor . . . is federal intervention at the appellate stage any the less a disruption of the State's efforts to protect interests which it deems important. Indeed, it is likely to be even more disruptive and offensive . . . .

_Huffman_, 420 U.S. at 608-09. These arguments apply with equal force in the present case because Murphy's decision to file a federal court complaint before exhausting his administrative remedies threatens to undermine the hearing process established

---

termination. Thus, this case directly implicates the concerns on which the _Younger_ doctrine is based.

by the police department for the adjudication of disciplinary complaints. See O'Neill v. City of Philadelphia, 32 F.3d 785, 791 (3d Cir. 1994) (Younger abstention applies to final administrative rulings that have not been appealed to state court); Alleghany Corp. v. Pomeroy, 898 F.2d 1314, 1317-18 (8th Cir. 1990) (same); but cf. Norfolk & Western Ry. v. Pub. Util. Comm'n of Ohio, 926 F.2d 567, 572-73 (6th Cir. 1991) (Younger abstention does not apply if administrative proceedings have been completed and the agency's ruling has not been appealed); Thomas v. Texas State Bd. of Med. Exam'rs, 807 F.2d 453, 456 (5th Cir. 1987) (same). Accordingly, I reject Murphy's contention that no state proceedings were pending for purposes of Younger abstention simply because he has failed to appeal to the police commission.

**B.   The Second Younger Requirement: Important State Interests are Implicated**

Murphy next argues that Younger abstention is inappropriate because the disciplinary proceedings do not implicate important state interests. I also find this contention unpersuasive.

Murphy was charged with multiple violations of the police department's regulations. The supervision of law enforcement personnel sworn to protect and serve the public unquestionably involves an interest of vital importance to state (or, in this

-13-

case, municipal) government.  See Gniotek v. City of Philadelphia, 630 F. Supp. 827, 835 (E.D. Pa.) ("[S]tate action in dismissing the plaintiff police officers was intended to vindicate an important policy . . . for the protection of its residents . . . ."), aff'd, 808 F.2d 241 (3d Cir. 1986); Fontaine v. City of Chester, No. 85-2453, 1986 U.S. Dist. LEXIS 21240, at *11 (E.D. Pa. Aug. 28, 1986) (concluding that city had a "paramount interest in performing its legitimate government function of supervising and disciplining its law enforcement officials"); McDonald v. Metro-North Commuter R.R. Div. of Metro. Transit Auth., 565 F. Supp. 37, 40 (S.D.N.Y. 1983) ("New York State's interest in disciplining police officers . . . is the sort of important state interest which precludes federal interference . . . ."). Accordingly, there is little question that the underlying disciplinary proceedings against Murphy implicate an important state interest for the purposes of Younger analysis.

C.   **The Third Younger Requirement: An Adequate Opportunity to Raise Constitutional Challenges**

Younger's third requirement mandates that a federal plaintiff must have "an adequate opportunity in the state proceedings to raise constitutional challenges."  Middlesex

County, 457 U.S. at 432. A federal plaintiff alleging an inability to raise constitutional claims must demonstrate that "state procedural law barred [the] presentation of [his or her constitutional] claims." Pennzoil, 481 U.S. at 14 (quoting Moore v. Sims, 442 U.S. 415, 432 (1979)); Brooks v. New Hampshire Supreme Court, 80 F.3d 633, 639 (1st Cir. 1996). In cases such as this, where the federal court plaintiff did not attempt to present his constitutional claims during the state proceedings, a federal court "should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." Pennzoil, 481 U.S. at 15.

Murphy has failed to produce any evidence to support his assertion that the police department's regulations prevented him from presenting his constitutional claims to the disciplinary board. Nor has he suggested that the police commission would refuse to consider his claims if he were to appeal the termination decision. The members of both bodies have a duty to uphold the Constitution and absent evidence that one or more board members are biased against him, I am unwilling to presume that they are not prepared to discharge their constitutional responsibilities.

In any event, even if the disciplinary board had refused to

consider Murphy's constitutional claims, <u>Younger</u>'s adequate opportunity requirement would be satisfied if Murphy is accorded a meaningful chance to present his claims during the judicial review process.  See <u>Dayton Christian Schools</u>, 477 U.S. at 629; <u>Sullivan v. City of Pittsburgh, Pa.</u>, 811 F.2d 171, 177 (3d Cir. 1987).  Murphy argues that state law does not give him this opportunity because the only way that he could have obtained judicial review of an adverse police commission ruling is by filing a petition for writ of certiorari with the superior court. He argues that this opportunity for judicial review is inadequate because the court has discretion to reject his petition without addressing the merits of his constitutional claims.

In <u>Fieger v. Thomas</u>, 74 F.3d 740 (6th Cir. 1996), the Sixth Circuit recently considered whether state law according a federal plaintiff a right to seek discretionary judicial review from an adverse agency decision is sufficient to satisfy <u>Younger</u>'s adequate opportunity requirement.  There, an attorney faced compulsory hearings before a state bar association disciplinary board.  The attorney claimed that the proceedings offered him an inadequate forum to raise his constitutional challenges, and urged the inapplicability of <u>Younger</u> abstention because state law did not afford him an automatic state court appeal from the

-16-

administrative proceedings. See Fieger, 74 F.3d at 747-48. The court of appeals rejected both contentions. On the attorney's first claim, the court stated,

> Fieger has failed to demonstrate that members of the hearing panel and the Board, "the majority of whom are lawyers, would have refused to consider a claim that the rules which they were enforcing violated federal constitutional guarantees." . . . Even if the Board could not declare a Rule of Professional Conduct unconstitutional . . . [t]he Board could . . . refuse to enforce it or, perhaps, narrowly construe it. We are not convinced, therefore, that Fieger is unable to raise his constitutional claims in the disciplinary proceedings.

Id. (quoting Middlesex County, 457 U.S. at 435). The court also rejected the attorney's second contention, noting instead that "the ability to raise constitutional issues before the Board as well as an opportunity to raise them again in a petition for leave to appeal satisfies the third requirement for Younger abstention." Id. at 749; see also Hirsh v. Justices of Supreme Court of California, 67 F.3d 708, 713 (9th Cir. 1995) (per curiam) (holding that availability of discretionary judicial review is sufficient to satisfy third Younger requirement); Beltran v. California, 871 F.2d 777, 781, 783 (9th Cir. 1988) (third Younger requirement met when plaintiff has the opportunity to present federal claims in a petition for a writ of review

-17-

despite the fact that state court simply "denied the petition without elaboration"); <u>Martori Bros. Distribs. v. James-Massengale</u>, 781 F.2d 1349, 1352, 1354 (9th Cir.) (discretionary review of an administrative proceeding by an appellate court affords a sufficient opportunity to raise federal constitutional challenges to satisfy the third <u>Younger</u> requirement), <u>amended on other grounds</u>, 791 F.2d 799 (9th Cir. 1986); <u>Fresh Int'l Corp. v. Agric. Labor Relations Bd.</u>, 805 F.2d 1353, 1362 (9th Cir. 1986) (same).

I am persuaded by the reasoning of <u>Fieger</u> that a federal plaintiff has an adequate opportunity to raise constitutional claims in state court if the plaintiff has the right to present his claims in a petition for discretionary review. Notwith-standing Murphy's unsupported assertions to the contrary, New Hampshire law permits an aggrieved party to raise constitutional challenges in a certiorari petition. <u>See</u> <u>Petition of Preisendorfer</u>, 143 N.H. 50 (1998) (considering state constitu-tional challenge). Accordingly, Murphy has been given an adequate opportunity to raise his constitutional claims during the state proceedings.[4]

---

[4] <u>Garbrilowitz v. Newman</u>, 582 F.2d 100, 101-02 (1st Cir. 1978) is inapposite. The court's opinion in that case was based

## D.  The Bias Exception: No "Exceptional Circumstances" are Present

After determining that the three primary requirements for Younger abstention have been met in a given case, a federal court ordinarily should abstain from acting on a complaint that would interfere with ongoing state judicial proceedings.  The Younger abstention doctrine does not bar federal court action, however, when the state proceedings are so tainted by personal interest or prejudgment that the proceedings themselves violate plaintiff's constitutional right to due process of law.  See Gibson v. Berryhill, 411 U.S. 564, 578-79 (1973).  Murphy argues that the police department's disciplinary proceedings are tainted by impermissible bias because (1) Chief Driscoll improperly "commingled investigative, accusative and adjudicative functions," Pl.'s Mem. at 13, by participating in the investigation, signing the complaint, and serving as the final decisionmaker reviewing the disciplinary board's findings and recommendations; (2) board member Steinmetz was appointed in violation of department regulations and is one of the prosecutor's supervisors; and (3) the board received legal advice

_____

in part on the fact that the plaintiff had no opportunity to obtain state court judicial review from an adverse administrative ruling.  See 582 F.2d at 102.  Thus, to the extent that Garbrilowitz remains good law, it is distinguishable.

-19-

from the city solicitor's office, which in the past has represented the city in litigation with the patrolman's association.  I address each argument in turn.

1.  **Chief Driscoll**

The short answer to Murphy's bias claim against Chief Driscoll is that the First Circuit has already rejected an identical claim arising from indistinguishable facts.  In Brasslett v. Cota, 761 F.2d 827, 837 (1st Cir. 1985), a local fire chief who had been discharged sued the town and the town manager who fired him.  The fire chief argued, among other things, that the defendants violated his right to procedural due process because the town manager both initiated the charge that led to the dismissal and served as the final decisionmaker on the charge after receiving a recommended disposition from the town's appeals board.  See id. at 829-30, 833.  In rejecting the fire chief's procedural due process challenge, the court held that an administrator may not be presumed to be constitutionally biased merely because he or she issued both the initial discharge decision and the final decision after a hearing before the appeals board.  See id. at 837; see also Withrow v. Larkin, 421 U.S. 35, 47-48, 55 (1975).  This holding plainly bars Murphy from basing a bias claim solely on the structure of the disciplinary

hearing process. Since Murphy has produced no evidence of bias against Chief Driscoll other than the kind of "free-floating invective, unanchored to specific facts" that the First Circuit has elsewhere found to be insufficient, Brooks 80 F.3d at 640, I reject Murphy's claim that Driscoll was biased against him.

### 2. Lieutenant Steinmetz

Murphy's bias charge against Lieutenant Steinmetz fares no better. The mere fact that Steinmetz supervises one of the prosecutors charged with presenting evidence against Murphy does not establish that he has an interest in the case or that he prejudged the matter. Nor does it suggest improper bias if, as Murphy claims, Steinmetz was appointed in violation of a department regulation. Without some evidence that Steinmetz either prejudged the case or had some kind of personal interest in its outcome, Murphy's allegations simply are insufficient to support a claim of bias.

### 3. City Solicitor

Murphy's suspicions that the city solicitor harbors a bias against him because the solicitor's office previously represented the city in litigation against the patrolman's association also fails to support a viable bias claim. Murphy has cited no case law to support his assertion that a city attorney is disabled

-21-

from advising a disciplinary board considering charges against a union official if the attorney has represented the city in other litigation against the union. This argument is simply too attenuated to support a claim of unconstitutional bias on the part of either the city solicitor or the disciplinary board. I thus reject Murphy's claim that exceptional circumstances are present in this case that warrant an exception to the <u>Younger</u> abstention doctrine.[5]

---

[5] The exclusion of one of Murphy's attorneys from the administrative hearing also is not the kind of unusual circumstance that would warrant an exception to the <u>Younger</u> abstention doctrine. The police department's regulations give Murphy an adequate opportunity to present his argument on this issue initially to the police commission and ultimately to a state court through a petition for writ of certiorari. <u>See, e.g.</u>, <u>Mann v. Jett</u>, 781 F.2d 1448, 1448-49 (9th Cir. 1986) (per curiam) (applying <u>Younger</u> abstention to claim that defendant was being denied the assistance of counsel in a state criminal proceeding); <u>Indiana v. Haws</u>, 131 F.3d 1205, 1210 (7th Cir. 1997), <u>cert. denied sub nom.</u> <u>In re Bisbee</u>, 118 S. Ct. 1803 (1998).

### III.  CONCLUSION

Because the tripartite test for <u>Younger</u> abstention has been satisfied and no "exceptional circumstances" exist, I must abstain from reaching the merits of this case.  Accordingly, Murphy's claims for injunctive relief are dismissed without prejudice.  His claims for damages are stayed pending the resolution of state proceedings.[6]  See <u>Kyricopoulos v. Town of Orleans</u>, 967 F.2d 14, 15-16 n.1 (1st Cir. 1992) (noting that "[a]s for § 1983 <u>damages</u> actions, it is appropriate to stay the federal action pending the conclusion of the state . . . proceedings") (emphasis in original).  All other pending motions

---

[6]  The police department's regulations do not specify a time limit within which an appeal to the police commission must be taken.  If Murphy has forfeited his right to review by unreasonably delaying his appeal, it is likely that his claims in this action will be barred by administrative res judicata.  <u>See, e.g.</u>, <u>Morin v. J.H. Valliere Co.</u>, 113 N.H. 431, 433 (1973).  I decline to reach this issue now, however, because I cannot determine on the present record whether Murphy has forfeited his right to appeal.

are denied.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

September 17, 1999

cc:  Kenneth J. Gould, Esq.
     Frank Mondano, Esq.
     Mark Broth, Esq.