James BUNNING, Plaintiff–Appellee,

v.

COMMONWEALTH OF KENTUCKY and Kentucky Registry of Election Finance, An Independent Agency of the Commonwealth of Kentucky, Defendants–Appellants.

No. 94–5287.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 12, 1994.

Decided Dec. 22, 1994.

John C. Greiner (argued and briefed), Graydon, Head & Ritchey, Cincinnati, OH, J. Jeffrey Landen, Richard L. Robinson (briefed), Graydon, Head & Ritchey, Florence, KY, for plaintiff-appellee.

Timothy E. Shull (argued and briefed), Donald H. Vish (briefed), Kentucky Registry of Election Finance, Frankfort, KY, for defendants-appellants.

Before: KEITH and DAUGHTREY, Circuit Judges; and JOINER, District Judge *.

---

* The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation.

JOINER, District Judge.

Defendants, the Commonwealth of Kentucky and the Kentucky Registry of Election Finance (collectively, the "Registry"), appeal the judgment in favor of plaintiff, United States Congressman James Bunning. This case arose out of the Registry's attempt to investigate a poll conducted by Congressman Bunning's federal election committee to test the effectiveness of advertising conducted during his 1992 federal campaign. The Registry claimed that Congressman Bunning also may have used the poll to assess his potential as a future gubernatorial candidate, and that state law prohibited exploratory activity such as this. Congressman Bunning filed suit in federal court, contending that federal law preempted state law, and precluded the Registry from investigating the poll. The district court determined that it had subject matter jurisdiction and was not required to abstain from adjudicating the parties' dispute. Further, the court concluded that the Federal Election Campaign Act, 2 U.S.C. §§ 431 et seq., preempted Kentucky law on the facts of this case, and enjoined the Registry from taking further action with respect to the poll. Finally, the court awarded attorney fees to Congressman Bunning.

The Registry appeals each of these rulings. We conclude that the award of attorney fees must be reversed. We affirm in all other respects.

## I.

### A.

In 1992, Kentucky amended its general campaign finance statute, Ky.Rev.Stat.Ann. Chapter 121, §§ 121.015 et seq. (Baldwin Supp.1993); and also enacted the Public Financing Campaign Act, Ky.Rev.Stat.Ann. Chapter 121A, §§ 121A.005 et seq. (Baldwin Supp.1993), which provides for public financing of gubernatorial elections. Under the new system, candidates for governor and lieutenant governor must register as a slate, Ky.Rev.Stat. § 118.127, and file a "notice of intent" which discloses whether the candidates intend to participate in public financing, a decision which will dictate which set of financing provisions apply to them. Ky.Rev. Stat. § 121A.040. A "participating" slate must agree to abide by specified limits on campaign expenditures during the primary, run-off primary, and general election. Ky. Rev.Stat. § 121A.030. A slate has the option of not participating in public financing, and, if it so chooses, is not subject to these limits.[1] The 1995 gubernatorial election will be the first conducted under the new law.

The Registry of Election Finance is charged with responsibility for overseeing compliance with Kentucky's election finance law generally, and for investigating alleged violations of the law. The Registry is authorized to investigate complaints; issue subpoenas and seek enforcement of those subpoenas in state court; hold hearings, receive evidence and issue orders; and issue advisory opinions. Ky.Rev.Stat. §§ 121.120–121.140.

Registry attorney Anita Stanley testified at trial regarding the Registry's efforts to promulgate regulations and develop enforcement procedures under the new law. Pertinent to its investigation of Congressman Bunning, Stanley testified that the expenditure limitations apply to amounts spent both before and after a slate's notice of intent is filed. The Registry's legal staff has informed potential candidates asking for guidance that the Public Financing Campaign Act "does not allow for exploratory activity because such activity would not be subject to any reporting requirements and, therefore, there's no accountability. And we have basically told everyone, you cannot spend the money until you form a slate." Stanley acknowledged that this proscription derives from the Registry's interpretation of several provisions of the public financing law, not an express statutory prohibition. The Registry has not identified those provisions on which it bases its interpretation. At the time of trial, legislation was being proposed to "deal with the question of exploratory activity by statute because it is not addressed at this point. We would like to see something on

---

1. If expenditures by a nonparticipating slate exceed the limits applicable to participating slates, the participating slates may be released from the expenditure limitation, while still being eligible for public funding. Ky.Rev.Stat. § 121A.080(4)(a).

the books that ties it up so that we can enforce it."

Congressman Bunning, a Republican, was elected to his fourth term in 1992. In August 1993, a Kentucky newspaper published an article regarding a poll conducted by Congressman Bunning, quoting him as stating that he considered running in the 1995 gubernatorial election to be a "valid option" if Republicans did not make gains in the 1994 national elections. According to the article, Congressman Bunning's top priority remained winning reelection to his House seat in 1994.[2] The article further reported that his "statewide considerations" were buoyed by the poll, which sampled 600 people across the state, and compared him to Democrats viewed as gubernatorial possibilities.

At this juncture, Bunning said he does not intend to run for governor. But given the results of the poll, and the GOP's minority status in Congress, it's something he plans to consider.

"The '94 congressional elections are vital to me," Bunning said. "I don't enjoy being in the minority. But if things turn out like I think they might, I believe we'll have more balance."

Based on this article, the chairman of Kentucky's Democratic Party filed a complaint with the Registry, relying on the Registry's interpretation of the new law as prohibiting expenditures for exploratory activity. The complaint alleged that the statewide poll was in violation because it covered an area larger than Congressman Bunning's district and provided information on his rating as a possible candidate for governor.

Congressman Bunning responded by affidavit, stating that he was a present member of Congress and a potential candidate for reelection, and that he had registered a committee with the Federal Election Commission ("FEC") by the name of Citizens for Bunning. Congressman Bunning explained that four media markets penetrated his Congressional district, and that those markets extend far outside the district. Congressman Bunning stated that his campaign committee had purchased commercial air time in all four

markets during his previous campaign, and conducted the poll to test the effectiveness of that advertising both inside and outside the district. Congressman Bunning stated that the poll was conducted in connection with election to a federal office, and expressly denied that it was conducted in furtherance of election to any state office. Finally, Congressman Bunning stated that the expenditure for the poll was regulated by the FEC and proper under its guidelines, and that the Registry was preempted from taking action to review the expenditures for the poll.

The Registry requested Congressman Bunning to voluntarily produce the questions asked in the poll, but Congressman Bunning declined. Despite Registry counsel's stated opinion that the Registry lacked jurisdiction and that the complaint should be referred to the FEC for investigation, the Registry again requested Congressman Bunning to produce the poll questions so that the Registry could determine whether it had jurisdiction. When he failed to do so, the Registry issued a subpoena for the poll questions.

### B.

Upon being notified that the Registry intended to issue a subpoena, Congressman Bunning filed suit in federal court, alleging that the Federal Election Campaign Act preempted the Registry from taking any further action against him regarding the poll. Congressman Bunning moved for a preliminary injunction and defendants moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim on which relief can be granted. On the parties' joint motion, trial on the merits was merged with a hearing on the motions.

The only witness to testify other than Registry attorney Stanley was Oteka Brab, the treasurer of Citizens for Bunning. Brab testified that the committee was subject to federal law and oversight by the FEC. As committee treasurer, Brab reported campaign receipts and expenditures to the FEC, including the $1400 spent on the poll in question. Brab further testified that a candidate

**2.** Congressman Bunning won reelection in November 1994. Presumably, his concerns regard-

ing his party's representation in Congress have been allayed by that election.

is not prohibited by federal law from receiving campaign contributions from donors outside his district, and that Congressman Bunning had received such donations in the past. Finally, Brab testified that Citizens for Bunning had conducted statewide polls in the past, as often as every two years.

The district court found in Congressman Bunning's favor, awarding him declaratory and injunctive relief, costs, and attorney fees in an amount to be determined after this appeal.

## II.

The Registry challenges the district court's holdings that it had subject matter jurisdiction and need not abstain from deciding this case, that federal law preempted state law, and that Congressman Bunning was entitled to attorney fees.

■ The district court's subject matter jurisdiction to entertain Congressman Bunning's preemption challenge to the Registry's investigation is clear. *Lawrence County v. Lead–Deadwood Sch. Dist. No. 1*, 469 U.S. 256, 259 n. 6, 105 S.Ct. 695, 697 n. 6, 83 L.Ed.2d 635 (1985); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 2899 n. 14, 77 L.Ed.2d 490 (1983)[3]; *Alltel Tennessee, Inc. v. Tennessee Pub. Serv. Comm'n*, 913 F.2d 305 (6th Cir.1990). The propriety of the district court's refusal to abstain likewise is settled. "Abstention rarely should be invoked, because the federal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them.'" *Ankenbrandt v. Richards*, — U.S. —, —, 112 S.Ct. 2206, 2215, 119 L.Ed.2d 468 (1992) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976)). This court has concluded that abstention is not required in a case presenting facially conclusive claims of federal preemption, where resolution of the dispute does not require the court to interpret state law or make factual findings. *Norfolk & Western Ry. v. Public Utilities Comm'n of Ohio*, 926 F.2d 567, 573 (6th Cir.1991).

■ The central question is whether the Federal Election Campaign Act, 2 U.S.C. §§ 431 et seq. ("FECA"), preempts Kentucky law, and thus precludes the Registry from investigating the July 1993 poll. Originally enacted in 1971, the FECA sets forth comprehensive rules regarding campaigns for federal office. The FECA imposes limits and restrictions on contributions; provides for the formation and registration of political committees; and mandates reporting and disclosure of receipts and disbursements made by such committees. 2 U.S.C. §§ 432–434. The FECA also created the Federal Election Commission, which is empowered with the administration and enforcement of the Act. 2 U.S.C. §§ 437c–438. To this end, the FEC is authorized to conduct investigations, issue subpoenas, administer oaths, receive evidence, and initiate civil actions to enforce the provisions of the FECA.

In determining the preemptive scope of the FECA, we are guided by *Cipollone v. Liggett Group, Inc.*, — U.S. —, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), where the Supreme Court stated that consideration of issues under the Supremacy Clause "'start[s] with the assumption that the historic powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress.'" *Id.* at —, 112 S.Ct. at 2617 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). When Congress has enacted a preemption which provides a reliable indicium of congressional intent with respect to state authority, the court need only "identify the domain expressly pre-empted[.]" *Id.* at —, 112 S.Ct. at 2618.

---

**3.** In *Shaw*, the Court stated:

It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights. A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.

*Id.* 463 U.S. at 96 n. 14, 103 S.Ct. at 2890 n. 14 (citations omitted).

With its 1974 amendments to the FECA, Congress added an express preemption clause which states that the "provisions of this Act, and of rules prescribed under this Act, supersede and preempt any provision of State law with respect to election to Federal office." 2 U.S.C. § 453. Section 453 replaced a prior provision which expressly saved state laws from preemption, except where compliance with state law would result in a violation of the FECA, or would prohibit conduct permitted by the FECA. *See* 2 U.S.C. § 453 note. Pursuant to § 453, "Federal law occupies the field with respect to reporting and disclosure of political contributions to and expenditures by Federal candidates and political committees, but does not affect State laws as to the manner of qualifying as a candidate, or the dates and places of elections." S. Conf. Rep. No. 1237, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 5587, 5618, 5668. The interpretive regulation, 11 C.F.R. § 108.7, sets forth the statute's preemptive scope in accordance with the statute's plain language and its legislative history:

(a) The provisions of the Federal Election Campaign Act of 1971, as amended, and rules and regulations issued thereunder, supersede and preempt any provision of State law with respect to election to Federal office.

(b) Federal law supersedes State law concerning the—

(1) Organization and registration of political committees supporting Federal candidates;

(2) Disclosure of receipts and expenditures by Federal candidates and political committees; and

(3) Limitation on contributions and expenditures regarding Federal candidates and political committees.

(c) The Act does not supersede State laws which provide for the—

(1) Manner of qualifying as a candidate or political party organization;

(2) Dates and places of elections;

(3) Voter registration;

(4) Prohibition of false registration, voting fraud, theft of ballots, and similar offenses; or

(5) Candidate's personal financial disclosure.

We conclude that § 453 preempts state law in this case. It is undisputed that the expenditure for the poll was made by a federal political committee, duly registered with the FEC. The expenditure was reported to the FEC, and there is no claim that an expenditure for a poll, a stated purpose of which was to test the effectiveness of advertising conducted during a federal campaign, is in any way unlawful under the FECA. At the time that the poll was conducted, Congressman Bunning had not declared himself a candidate for the gubernatorial race, and had expressly disavowed an intent to run in that race. On these facts, the Registry's intrusion into Congressman Bunning's federally regulated activity constituted an attempt to impose on a federal political committee Kentucky's requirements on both on the disclosure of expenditures and the limits on expenditures made by such a committee. The Registry's claimed right to do so is preempted by § 453 and 11 C.F.R. § 108.7(b)(2) and (3).

The Registry contends that the FEC itself would not view the Registry's investigation to be preempted by federal law. The Registry relies on FEC advisory opinions in which the FEC stated that excess campaign funds previously contributed to a candidate's federal campaign, if transferred to a state political committee for use in a state campaign, would be subject to state law and not preempted by federal law. *See FEC Advisory Opinions* 1993–10; 1986–5. These advisory opinions, however, are concerned principally with whether the use of funds contributed to federal campaigns for other purposes is lawful under 2 U.S.C. § 439a. The advisory opinions address the situation in which federal campaign funds are transferred or donated for permissible uses, and have no applicability to a state's attempt to investigate expenditures made by a federal political committee, where that expenditure remains subject to federal law and is duly reported to the FEC.

We are at a loss to identify a legitimate state interest in this expenditure. The Registry contends that Congressman Bunning used the poll, in part, to test the waters for a

possible gubernatorial run, and that this constituted "exploratory activity" prohibited by the new Public Financing Campaign Act. However, the Registry cannot identify a specific provision prohibiting such activity, and has not identified the various provisions which it claims combine to create such a prohibition. Moreover, we have grave concerns that such a construction of the statute would have a profound chilling effect on the exercise of protected rights to free association and speech.[4]

 The Registry's final challenge is to the award of attorney fees to Congressman Bunning. The authority of a district court to make such an award is delineated in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). The record in this case discloses no permissible basis for a fee award. Thus, we reverse that aspect of the judgment.

We **AFFIRM** the district court's entry of declaratory and injunctive relief, and **REVERSE** the order awarding attorney fees.

See also 42 F.3d 1015.

---

4. Shifting the justification for its investigation, the Registry now suggests that Congressman Bunning may have violated state reporting and disclosure requirements by not reporting the poll expenditure to the Registry. This allegation was not the basis for either the complaint against Congressman Bunning or the Registry's investigation, and was not raised in the district court. Additionally, the Registry's contention is directly refuted by attorney Stanley's testimony at trial that exploratory activity should be prohibited precisely because state reporting requirements do not apply.