**OFFICE OF CONSUMER ADVOCATE, a Division of the Iowa Department of Justice, Appellant,**

v.

**IOWA UTILITIES BOARD, Appellee,**

and

**Central Iowa Power Cooperative and Iowa Association of Electric Cooperatives, Intervenors–Appellees.**

No. 01–1379.

Supreme Court of Iowa.

Jan. 23, 2003.

**102**

John R. Perkins, Acting Consumer Advocate, and Jennifer C. Easler, Des Moines, for appellant.

Allan Kniep, General Counsel, and David J. Lynch, Deputy General Counsel, Des Moines, for appellee Iowa Utilities Board.

John T. Ward and Dennis L. Puckett of Sullivan & Ward, Des Moines, for intervenors-appellees Central Iowa Power Cooperative and Iowa Association of Electric Cooperatives.

LARSON, Justice.

Gregory Swecker built a wind generator on his land and attempted to connect it with the electric service already provided to him by Midland Power Cooperative. Swecker and Midland could not agree on the terms of the connection, and ultimately Swecker filed proceedings to place the dispute with the Iowa Utilities Board. The Office of Consumer Advocate (OCA), a division of the Iowa Department of Justice, became involved pursuant to its statutory authority. The board ruled that the Iowa Code provisions governing the relationship of Iowa utilities and the owners of alternative-energy facilities were preempted by federal law. On judicial review the district court affirmed, and on the appeal by the OCA, we affirm the district court.

### I. Facts and Prior Proceedings.

Swecker seeks to operate and connect his wind generator to the electrical grid through Midland, a rural electric cooperative (REC) serving the territory where Swecker resides. At the time Swecker installed the generator, he was receiving single-phase service. He requested a three-phase service, which is required to operate a wind generator, from Midland. Midland's terms for making the connection, however, were not acceptable to Swecker, and this dispute began.

Swecker's wind generator is called an alternative-energy-production or AEP facility that, OCA argues, is governed by Iowa Code sections 476.41 through .45 (1999), and the utility board's rules implementing the statute. See Iowa Admin. Code rs. 199—15.11–.16 (1999). Swecker complained that Midland had attempted to impose unlawful rates and terms on his AEP facility. He requested that the board exercise control over Midland, as provided by Iowa Code section 476.43, and force Midland to accept more favorable rules and rates. Midland resisted. The OCA filed a response supporting Swecker's request. (The OCA acts as attorney for and represents consumers and the public generally in proceedings before the utilities board. See Iowa Code § 475A.2(2)).

The board ruled that Iowa's AEP laws do not apply to Midland because the Federal Public Utility Regulatory Policies Act of 1978 (PURPA), 16 U.S.C. § 2601 (1999), preempts the application of Iowa's AEP law to utilities, such as RECs, that are otherwise exempt from rate regulation under state law.

### II. The Issue.

■ The issue on appeal is simply stated: Do the Iowa Code sections purporting to apply to *all* AEPs apply to Midland, which is a nonrate-regulated utility? Or is application of the state statute preempted by PURPA, as the board and district court ruled?

The federal regulatory statute makes a distinction between regulated and non-regulated utilities with respect to purchase from and sale of electricity. Section 2602(18) of 16 U.S.C. defines "state regulated electric utility" as "any electric utility with respect to which a State regulatory authority has ratemaking authority." Section 2602(9) defines "nonregulated utility" as "any electric utility other than a State regulated electric utility."

Under 16 U.S.C. § 824a–3(f):

(1) Beginning on or before the date one year after any rule is prescribed by the Commission under subsection (a) of this section or revised under such subsection, *each State regulatory authority* shall, after notice and opportunity for public hearing, implement such rule (or revised rule) for each electric utility *for which it has ratemaking authority.*

(2) Beginning on or before the date one year after any rule is prescribed by the Commission under subsection (a) of this section or revised under such subsection, *each nonregulated electric utility* shall, after notice and opportunity for public hearing, implement such rule (or revised rule).

(Emphasis added.)

Under section 824a–3(f), state regulatory authorities are directed to adopt rules for electric utilities for which the state has rate-making authority while "nonregulated" utilities are required to implement their own rules. 16 U.S.C. § 824a–3(f). In 1981 the board, then known as the Iowa State Commerce Commission, adopted the PURPA rules now found at Iowa Administrative Code rules 199–15.1 through 15.10 (2001). At that time the commerce commission had rate-making authority over investor-owned utilities and some customer-owned utilities, including RECs, but did not have rate-making authority over mu-nicipally owned electric utilities. *See* Iowa Code § 476.1 (1981).

In 1983 Iowa passed Senate File 380, directing the commission to adopt rules requiring *all* electric utilities to purchase from, and sell to, AEPs. Senate File 380 was codified as Iowa Code sections 476.41 to .45. In 1984 the agency adopted rules to implement the new AEP statute. *See* Iowa Admin. Code rs. 199—15.11–.16.

In 1984 the Iowa AEP rules were challenged in a judicial-review proceeding in which a group of municipally owned electric utilities challenged the application of the Iowa statute and board rules to municipal utilities. The utilities in that case claimed that PURPA preempted state regulation of transactions between AEPs and utilities such as municipal utilities, whose rates were not set by state authorities. *See Iowa Power & Light Co. v. Iowa State Commerce Comm'n,* 410 N.W.2d 236 (Iowa 1987). In *Iowa Power* we held the state-imposed regulations were preempted despite the commerce commission's argument that the commission had "independent, nonconflicting state-derived authority to impose the challenged rates" and "[b]ecause its exercise of separate and distinct state authority [in regulating AEPs] furthered rather than hindered the purpose underlying the federal legislation. . . ." *Id.* at 241.

In *Iowa Power* we held the state's attempted regulation of municipal utilities in their relationship with AEPs was preempted by the clear language of the federal act, 16 U.S.C. § 824a–3(f), which we said

separately directs implementation of the [federal] rules: to each state regulatory authority for the utilities over which it holds rate-making authority; [and] to the federal commission for "each non-regulated electric utility."

*Iowa Power,* 410 N.W.2d at 241. Only municipal utilities were involved in *Iowa*

*Power;* cooperatives such as Midland were not directly affected.

In 1986 the legislature enacted a statute, now found in Iowa Code section 476.1A, exempting electric cooperatives from rate regulation by the commerce commission. The statute provided expressly, however, that Iowa Code sections 476.41 through 476.44 (dealing with treatment of AEPs by the utility) would apply to electric cooperatives. The OCA contends that this express provision in section 476.1A, making AEPs subject to regulation by the board, distinguishes *Iowa Power* because *Iowa Power* did not consider the 1986 enactment (which came after the judicial-review decision in the district court in *Iowa Power*).

The federal statute, however, still provides that, as to AEPs, preemption turns on a bright-line rule. If a utility is nonrate regulated, it is subject to federal regulation, not state. Iowa's enactment of section 476.1A, which purports to apply Iowa Code sections 476.41 to .44 to electric cooperatives, is ineffective to accomplish the purpose OCA seeks from it. Simply stated, the state cannot "unpreempt" the field by enacting a statute that expressly, rather than by mere implication, conflicts with the federal statute.

### III. *Conclusion.*

We agree with the district court and the board: electric cooperatives such as Midland, which remain nonregulated for purposes of PURPA, are not subject to Iowa Code sections 476.41 to .44 because federal law preempts the field.

**AFFIRMED.**