**OCMC, INC., Plaintiff,**

v.

**John NORRIS, Diane Munns, and Curtis Stamp, Individually in their Official Capacities as members of the Iowa Utilities Board, Defendants,**

**and**

**Office of the Consumer Advocate, Intervenor.**

No. 4:06–CV–00069.

United States District Court,
S.D. Iowa,
Central Division.

April 24, 2006.

David Jay Lynch, Mary Frances Whitman, Iowa Utilities Board, Des Moines, IA, for Defendants.

Bret Alan Dublinske, Krista Kay Tanner, Dickinson Mackaman Tyler & Hagen PC, Des Moines, IA, for Plaintiff.

Craig F. Graziano, Consumer Advocate Office IA, Dept. of Justice, for Intervenor.

## ORDER

ROBERT W. PRATT, District Judge.

This case originated with a Complaint (Clerk's No. 1) filed by OCMC, Inc., doing business as One Call Communications ("One Call"). One Call's Complaint seeks declaratory and injunctive relief against Defendants John Norris, Diane Munns, and Curtis Stamp, who together make up the Iowa Utilities Board ("Board" or "IUB"). Together with its Complaint, One Call filed a Motion for Preliminary Injunction (Clerk's No. 2) seeking to enjoin the Iowa Utilities Board from taking any action against One Call while this case is pending. On March 3, 2006, the Iowa Office of the Consumer Advocate ("OCA") filed a Motion to Intervene (Clerk's No. 3), which the Court granted on March 7, 2006 (Clerk's No. 4). On March 8, 2006, OCA filed a Motion (Clerk's No. 5) requesting that this Court abstain from deciding the issues in this case pursuant to the doctrine articulated by the Supreme Court in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The Iowa Utilities Board filed a similar Motion (Clerk's No. 7) on March 9, 2006. One Call filed a Resistance (Clerk's No. 19) to the motions on March 27, 2006. The Office of the Consumer Advocate filed a Reply (Clerk's No. 22) on April 6, 2006, and the Iowa Utilities Board filed a Reply (Clerk's No. 24) on April 7, 2006. The matter is fully submitted.

## I. FACTS

One Call provides various types of consumer and business long distance and billing services, including a "10–10–XXX" service allowing callers to "dial around" a presubscribed long distance service plan when placing long distance telephone calls. One Call's Complaint states that the Iowa Utilities Board has received complaints from consumers relating to charges that appeared on their bills for One Call's services. Compl. ¶ 12. In response to these complaints, the Iowa Utilities Board contacted One Call, which refunded the disputed charges. According to One Call, most of the charges were determined to be the result of "cramming," which occurs when unauthorized charges are placed on

consumers' telephone bills. The Office of the Consumer Advocate has initiated proceedings to impose civil penalties against One Call. The proceedings have been referred to an Administrative Law Judge for adjudication. Compl. ¶ 13.

One Call asserts that state regulation of interstate and international communications services is preempted by the Communications Act of 1934 ("the Act" or "Communications Act"), and that certain Iowa laws and regulations violate the Supremacy Clause of the Federal Constitution. Specifically, One Call asserts that Iowa Code § 476.103 and 199 Iowa Administrative Code Rule 22.23 are preempted by federal law to the extent that the Iowa Utilities Board seeks to apply the provisions to calls that are interstate, international, or bound for an internet service provider ("ISP-bound calls"). Section 476.103 authorizes the Iowa Utilities Board to protect consumers from the practice of "slamming," which is when a telephone company changes a customer's service without authorization. The provision states:

> Notwithstanding the deregulation of a communications service or facility under section 476.1D, the [Iowa Utilities Board] may adopt rules to protect consumers from unauthorized changes in telecommunications service. Such rules shall not impose undue restrictions upon competition in telecommunications markets.

Iowa Code § 476.103(1). The provision also states: "The board shall adopt rules prohibiting an unauthorized change in telecommunications service. The rules shall be consistent with federal communications commission regulations regarding proce-

dures for verification of customer authorization of a change in service." Iowa Code § 476.103(3). The Iowa Utilities Board promulgated rules prohibiting unauthorized changes in service, including cramming and slamming. 199 Iowa Admin. Code r. 22.23(2). The Board's rules define cramming as "the addition or deletion of a product or service for which a separate charge is made to a telecommunication customer's account without the verified consent of the affected customer."[1] 199 Iowa Admin. Code r. 22.23(1).

## II. JURISDICTION & VENUE

This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331. See New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans, 491 U.S. 350, 358, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) ("NOPSI") (observing that federal courts have a duty to exercise jurisdiction). Venue is appropriate under 28 U.S.C. § 1391.

## III. ABSTENTION

In Younger v. Harris, the Supreme Court held that a federal court may not interfere with a pending state criminal proceeding. Younger, 401 U.S. at 41, 91 S.Ct. 746. The Court stated two reasons for this policy: (1) the doctrine that courts should not act in equity when the moving party has an adequate remedy at law and will not suffer irreparable injury if the court chooses not to act; and (2) the principle of comity, described by the Court as "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments." Id. at 43–44, 91 S.Ct. 746. Over the years, the Court has extended

---

1. The second portion of the "cramming" definition states: "Cramming does not include telecommunications services that are initiated or requested by the customer, including dial-around services such as '10–10–XXX,' directo-

ry assistance, operator-assisted calls, acceptance of collect calls, and other casual calling by the customer." 199 Iowa Admin. Code r. 22.23(1).

the *Younger* doctrine to civil cases where the state is a party, to civil cases implicating important state interests, and, most importantly for purposes of this case, to state administrative proceedings where an important state interest is at stake. *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 437, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (holding that *Younger* required the federal district court to refrain from interfering with disciplinary proceeding brought by state bar ethics committee); *Moore v. Sims,* 442 U.S. 415, 435, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (requiring abstention from interference with noncriminal state proceedings where important state interests were involved); *Juidice v. Vail,* 430 U.S. 327, 334, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (requiring abstention from civil action between private litigants where important state interests were implicated); *Trainor v. Hernandez,* 431 U.S. 434, 444, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (concluding that the principle of comity required the district court to refrain from interfering with a state's civil enforcement action); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 604, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (extending the doctrine to a civil case involving the state). The question before the Court is whether *Younger* and its progeny require the Court to abstain from enjoining the proceedings initiated against One Call in front of the Iowa Utilities Board.

■ *Younger* requires a federal court to abstain from issuing injunctive relief when: "(1) there is an ongoing state judicial proceeding which (2) implicates important state interests, and when (3) that proceeding affords an adequate opportunity to raise the federal questions presented." *Fuller v. Ulland,* 76 F.3d 957, 959 (8th Cir.1996) (citing *Middlesex County,* 457 U.S. at 432, 102 S.Ct. 2515); *see also Norwood v. Dickey,* 409 F.3d 901, 903 (8th Cir.2005). The Supreme Court has ob-

served that Younger abstention is "the exception, not the rule." *NOPSI,* 491 U.S. at 359, 109 S.Ct. 2506 (citations omitted). Nonetheless, "[w]here a case is properly within [the Younger] category of cases, there is no discretion to grant injunctive relief." *Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 816 n. 22, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Each of the Younger requirements is discussed below.

### A. *Ongoing State Judicial Proceeding*

The parties in this case agree that the Office of the Consumer Advocate has initiated administrative proceedings against One Call, and that One Call's goal in the current proceeding is to obtain an injunction against those proceedings. The first question that the Court must consider is whether the administrative proceedings initiated by the Office of the Consumer Advocate qualify as the sort of ongoing state judicial proceeding that triggers *Younger* abstention. In *Middlesex County,* the Supreme Court examined whether *Younger* required the district court to refrain from interfering with a disciplinary action commenced by New Jersey's bar ethics committee. Although the disciplinary action was commenced with the local Ethics and Grievance Committee, rather than in court, the Supreme Court concluded that the action was "judicial in nature," making it the subject of abstention under Younger. *Middlesex County,* 457 U.S. at 433–34, 102 S.Ct. 2515. The Court noted that any decision of the bar ethics committee would be reviewed by the New Jersey Supreme Court. *Id.* at 436 n. 15, 102 S.Ct. 2515. The Court also emphasized that New Jersey "has an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses." *Id.* at 434, 102 S.Ct. 2515.

The Supreme Court also applied *Younger* abstention to a state administrative proceeding in *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986). In *Dayton Christian Schools,* the Court reiterated its conclusion that state administrative proceedings could trigger *Younger* abstention where an important state interest is at stake. *Id.* at 628, 106 S.Ct. 2718. The Court noted that it did not matter whether the administrative body—in that case, the Ohio Civil Rights Commission—could consider the constitutionality of the statute at issue, so long as the constitutional issue could be raised in a state court review of the administrative proceeding. *Id.* at 629, 106 S.Ct. 2718; *see also NOPSI,* 491 U.S. at 369 & n. 4, 109 S.Ct. 2506 (noting that *Younger* applies to ongoing state administrative proceedings and indicating that it might also apply to state administrative actions that have become final, but declining to decide the question).

■ In the present case, the Iowa Utilities Board contends that the proceedings in front of it are judicial in nature. The Board further contends that it may consider any jurisdictional issues One Call raises, presumably including the question whether the state is preempted from addressing the consumer complaints it has received regarding One Call. Citing Iowa Code § 17A.19, the Board asserts that any decision it issues against One Call is subject to review in Iowa's courts. IUB Abstention Mem. at 5. One Call does not dispute that the proceedings before the Iowa Utilities Board are "judicial in nature," but instead contends that the proceedings are not lawful because the Board lacks jurisdiction due to federal preemption. One Call Resistance at 3.

Iowa Code § 476.2 grants the Iowa Utilities Board broad authority to regulate utilities in Iowa. Under the statute, the Board may issue subpoenas and establish rules of procedure, among other things. Iowa Code § 476.2(1). The Iowa Legislature granted the Board power to investigate consumer complaints and, if the Board determines that a utility's response is inadequate, the Board "shall promptly initiate a formal proceeding." Iowa Code § 476.3. The Office of the Consumer Advocate or the complainant may also request that the Board initiate a formal proceeding. *Id.* The Board must then afford the utility appropriate notice and a hearing. *Id.* Under Iowa Code § 476.13, proceedings before the Board are subject to judicial review in Iowa's district courts. Iowa Code § 476.13; *see also* Iowa Code § 17A.19.

The parties' filings with this Court indicate that the current proceedings involving One Call in front of the Iowa Utilities Board are the type of "formal proceeding" contemplated by Iowa Code § 476.3. They are subject to judicial review in Iowa's courts under §§ 476.13 and 17A.19. Moreover, it appears that the Iowa Utilities Board has in the past considered a claim of federal preemption under the Supremacy Clause. *See Office of Consumer Advocate v. Iowa Utils. Bd.,* 656 N.W.2d 101, 102 (Iowa 2003) (affirming a decision in which the Iowa Utilities Board concluded that certain Iowa Code provisions governing the relationship of Iowa utilities and owners of alternative-energy facilities were preempted by federal law). For these reasons, the Court concludes that the proceedings against One Call in front of the Iowa Utilities Board are "judicial in nature" and constitute an ongoing state judicial proceeding.

### B. *Important State Interest*

■ The next step in the Court's analysis of *Younger* is to consider the importance to the state of litigating the matter in the state forum. This is what the *Younger* Court termed "comity," and it is re-

flected in "a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Younger*, 401 U.S. at 44, 91 S.Ct. 746; *see also Middlesex County*, 457 U.S. at 434, 102 S.Ct. 2515 (concluding that the state had an important interest in regulating members of the bar).

The Iowa Utilities Board maintains that Iowa has an important state interest in enforcing its consumer protection laws. IUB Abstention Mem. at 4. The Office of the Consumer Advocate and the Board point to *Cedar Rapids Cellular Telephone, L.P. v. Miller*, a case in which the Eighth Circuit recognized that consumer protection in the telecommunications context is an important state interest sufficient to justify *Younger* abstention. 280 F.3d 874, 879–80 (8th Cir.2002). One Call, on the other hand, asserts that the Board cannot have an important state interest in enforcing laws that are preempted under the Supremacy Clause. One Call Resistance at 4.

One Call contends that it has made a facially conclusive case for preemption, thus making abstention inappropriate. A number of courts have concluded that, where a party establishes a "facially conclusive" or "readily apparent" case for preemption, the federal district court should not abstain in deference to the state law proceeding. *See Midwestern Gas Transmission Co. v. McCarty*, 270 F.3d 536, 539 (7th Cir.2001); *Chaulk Servs., Inc. v. Mass. Comm'n Against Discrimination*, 70 F.3d 1361, 1370 (1st Cir.1995); *Bud Antle, Inc. v. Barbosa*, 35 F.3d 1355, 1371

(9th Cir.1994), *amended by* 45 F.3d 1261, 1272–73 (9th Cir.1994); *Bunning v. Commonwealth of Ky.*, 42 F.3d 1008, 1011 (6th Cir.1994); *Nat'l R.R. Passenger Corp. v. Fla.*, 929 F.2d 1532, 1537 n. 12 (11th Cir. 1991) (citing *Baggett v. Dep't of Prof'l Regulation*, 717 F.2d 521, 524 (11th Cir.1983)); *Gartrell Constr. Inc. v. Aubry*, 940 F.2d 437, 441 (9th Cir.1991) (citing *Champion Int'l Corp. v. Brown*, 731 F.2d 1406, 1408–09 (9th Cir.1984)); *Norfolk & Western Ry. Co. v. Pub. Utils. Comm'n*, 926 F.2d 567, 573 (6th Cir.1991). Neither the Supreme Court nor the Eighth Circuit have explicitly decided this issue, but the *NOPSI* Court surmised that a facially conclusive claim of preemption might be sufficient to render abstention inappropriate. *NOPSI*, 491 U.S. at 367, 109 S.Ct. 2506; *see also Cedar Rapids Cellular*, 280 F.3d at 880 & n. 2. At the same time, the *NOPSI* Court indicated that the federal interest in enforcing the Supremacy Clause is no greater than the federal interest in enforcing any other constitutional provision. *Id.* at 365, 109 S.Ct. 2506.

With these principles as guidance, the Court will consider whether One Call's preemption claim is facially conclusive. Because One Call's Resistance to the Motions for Abstention emphasizes One Call's position that the state proceedings are preempted as a facial matter, the Court is in the unusual position of examining the preemption question in the course of deciding whether to abstain from deciding the preemption question. As discussed above, the Court will focus on the question whether there is a "facially conclusive" case for preemption for the purpose of deciding whether to abstain under *Younger*, rather than on the ultimate question of whether the Iowa statute and regulations are preempted.[2]

---

**2.** In doing so, the Court is mindful of the fact that even a "facially conclusive" case for preemption does not necessarily defeat an other-

wise valid abstention claim in the Eighth Circuit. *NOPSI*, 491 U.S. at 367, 109 S.Ct. 2506;

### 1. Preemption generally.

Federal preemption is based on the Supremacy Clause of Article VI of the Constitution. *La. Pub. Serv. Comm'n v. FCC,* 476 U.S. 355, 368, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986). The Supreme Court has recognized three circumstances where federal law preempts state law. First, federal law is preemptive where Congress includes express preemptive language in the statute. *Wisc. Pub. Intervenor v. Mortier,* 501 U.S. 597, 604–05, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991). Second, federal preemption may be implicit where Congress has chosen to "occupy a particular field," leaving no room for state regulation. *Id.* at 605, 111 S.Ct. 2476. Third, preemption may occur where there is an actual conflict between state and federal law. *Id.* Whether a federal statute preempts state law turns on congressional intent. *Id.* at 604, 111 S.Ct. 2476. Preemption may stem either from an act of Congress, or from a federal agency acting within the scope of its congressionally delegated authority. *La. Pub. Serv. Comm'n,* 476 U.S. at 369, 106 S.Ct. 1890.

One Call's argument that the Communications Act of 1934 preempts state regulation is based on the language of 47 U.S.C. §§ 151 and 152. Section 151 establishes the Federal Communications Commission ("FCC"), while Section 152(a) grants jurisdiction to the FCC to regulate "interstate and foreign communication by wire or radio." 47 U.S.C. § 152(a). Section 152(b) expressly denies the FCC jurisdiction with respect to intrastate communications, leaving regulation of intrastate communications to the states. 47 U.S.C. § 152(b); *La. Pub. Serv. Comm'n,* 476 U.S. at 360, 106 S.Ct. 1890. The Supreme Court has recognized that the Communications Act establishes "a system of dual state and federal regulation over telephone service." *La. Pub. Serv. Comm'n,* 476 U.S. at 360,

106 S.Ct. 1890. Construing sections 151 and 152, the Supreme Court also observed that the nature of the telecommunications industry makes it difficult to divide regulatory responsibility neatly into two spheres:

> [W]hile the Act would seem to divide the world of domestic telephone service neatly into two hemispheres—one comprised of interstate service, over which the FCC would have plenary authority, and the other made up of intrastate service, over which the States would retain exclusive jurisdiction—in practice, the realities of technology and economics belie such a clean parceling of responsibility.

*Id.* The Act's division of responsibility was altered somewhat by the Telecommunications Act of 1996 ("1996 Act"), which expanded the ability of the FCC to regulate certain aspects of intrastate telecommunications. The Supreme Court's observations in Louisiana Public Service Commission remain applicable to the extent permitted by the 1996 Act. *See AT & T Corp. v. Iowa Utils. Bd.,* 525 U.S. 366, 381 n. 8, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999).

In light of this dual system of regulation, there is no basis for concluding that §§ 151 and 152 expressly preempt Iowa from enacting the consumer protection provisions at issue. One Call's arguments therefore must be based either on an intent by Congress to "occupy the field" of telecommunications regulation with respect to interstate and international calls, or by a conflict between state and federal laws and policies.

### 2. Did Congress intend to "occupy the field"?

One Call contends that the Communications Act of 1934 grants the FCC plenary authority over interstate and international

*see also Cedar Rapids Cellular,* 280 F.3d at 880 & n. 2.

communications regulation, including ISP-bound calls. One Call Resistance at 4; *see* 47 U.S.C. § 151, 152(a). Furthermore, One Call argues, "every complaint against One Call has involved an interstate, international, or ISP-bound call." One Call Resistance at 9. Therefore, One Call contends, the Iowa Utilities Board does not have a legitimate interest in investigating the complaints against One Call. The Iowa Utilities Board, in turn, argues that each of the cases currently pending before it originated with a consumer complaint about unauthorized charges appearing on the customer's local telephone bill, with a single exception. The Board describes the disputed charges as falling into one or more categories: "charges for long-distance calls which the consumers deny making; charges for alleged hotel/motel guest calls which the consumers deny making; charges for calls to Internet web sites which the consumers deny making; or charges for collect calls which the consumer denies accepting or making." IUB Abstention Mem. at 3. The Board states: "[N]othing has been proven yet in the cases pending before the Board and ... the Board has not made any decisions about any issues presented thus far in the complaint proceedings." *Id.* at 5. The Office of the Consumer Advocate describes the cases against One Call as "modem hijacking" cases, in which the complaining customer's modems were allegedly accessed without their consent to place calls to adult content websites.[3] The Office of the Consumer Advocate also states that the facts behind the cases "are not yet clear." OCA Abstention Mem. at 4, 18. The parties' pleadings indicate that the Iowa Utilities Board has not yet developed a factual record about the calls that prompted the consumer complaints against One Call.

Courts have taken several approaches to uncertain facts in a motion for abstention. In a case involving the Iowa Attorney General's efforts to regulate telecommunications, the Eighth Circuit indicated that the absence of a factual record may preclude a facially conclusive finding of preemption, noting that "the necessity of developing a factual record on the [telephone company's] business practices and rate structure would appear to foreclose any argument of conclusive preemption." *Cedar Rapids Cellular,* 280 F.3d at 880 n. 2; *see also NOPSI,* 491 U.S. at 367, 109 S.Ct. 2506 ("[W]hat requires further factual inquiry can hardly be deemed 'flagrantly' unlawful for purposes of a threshold abstention determination."). Other courts have treated a motion for abstention as a motion to dismiss, accepting the plaintiff's allegations as true and limiting review to the facts contained on the face of the pleadings. *See Kenny A v. Perdue,* 218 F.R.D. 277, 287 n. 7 (N.D.Ga.2003). Still other courts treat a motion for abstention as a motion to dismiss for lack of subject matter jurisdiction. *See Stein v. Legal Adver. Comm. of the Disciplinary Bd.,* 272 F.Supp.2d 1260, 1263 n. 3 (D.N.M.2003) *(citing Hazbun Escaf v. Rodriquez,* 191 F.Supp.2d 685, 687 n. 7 (E.D.Va.2002), *aff'd* 52 Fed. Appx. 207 (4th Cir.2002)); *DeLoreto v. Ment,* 944 F.Supp. 1023, 1028–29 (D.Conn. 1996). Under this approach, the court may review affidavits and other evidence to resolve factual disputes concerning whether it should abstain. *Id.* The Sixth Circuit, which has concluded that abstention is not required in a case presenting facially conclusive claims of federal pre-

---

**3.** According to OCA, a case in the Second Circuit involved a similar scheme. *See FTC v. Verity Inter'l, Ltd.,* 443 F.3d 48 (2d Cir.2006). OCA also describes one complaint in Iowa that involves billings by One Call for a series of collect telephone calls from a company that sells adult content telephone calls. OCA Abstention Mem. at 5.

emption, has observed that the principle only applies where the district court is not required to interpret state law or make factual findings. *Bunning*, 42 F.3d at 1011; *Norfolk & Western*, 926 F.2d at 573.

In the Court's view, the lack of a developed factual record in this case impedes any potential finding of facially conclusive preemption, particularly in light of the Board's contention that the disputed charges appeared on customers' local telephone bills and were for calls that the customers claimed they never made. In this case, the difficulty of dividing the world of telephone regulation into two spheres is underscored by the absence of a complete factual record. The Office of the Consumer Advocate's investigation of One Call appears to be designed, in part, to discern exactly from where the disputed charges originated.

Even if the Court construes this abstention motion as a motion to dismiss and accepts One Call's argument that each complaint against One Call has involved an interstate, international, or ISP-bound call, the Court cannot conclude, as a facial matter, that the Communications Act completely preempts the state's attempt to respond to cramming complaints. One Call cites 47 U.S.C. § 207 for the proposition that the FCC and the federal courts have exclusive jurisdiction over complaints arising under the Communications Act. *See* Compl. ¶ 18. Section 207 states that any person damaged by a carrier subject to the Act's provisions may make a complaint either to the FCC or bring an action in Federal Court, but does not answer the question whether a state may investigate complaints about charges on a local telephone bill when the complainant contacts the state first. 47 U.S.C. § 207. As the Office of the Consumer Advocate points out, courts have long been divided on the question whether the Communications Act completely preempts state law. In *Ver-*

*mont v. Oncor Communications, Inc.*, the district court held that § 207 precluded a state from enforcing its consumer protection laws because, in that court's view, consumer complaints were governed solely by federal law. 166 F.R.D. 313, 319 (D.Vt. 1996). Other courts have disagreed with this reasoning, concluding instead that the Act does leave room for state law claims. *See Marcus v. AT & T Corp.*, 138 F.3d 46, 54 (2d Cir.1998) (concluding there was no complete preemption for purposes of removal to federal court); *Sapp v. AT & T Corp.*, 215 F.Supp.2d 1273, 1277 & n. 4 (M.D.Ala.2002) (same); *DeCastro v. AWACS, Inc.*, 935 F.Supp. 541, 550 (D.N.J. 1996) (same). These cases rely in part on the "savings clause" in the Act, which states: "Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 47 U.S.C. § 414. In light of the disagreement between courts on this question, the Court cannot conclude, for purposes of *Younger* abstention, that there is a "facially conclusive" case for preemption here.

One Call also points to the FCC's website, which advises consumers who believe they have been subject to "cramming" to contact their state regulatory commission for telephone-related services provided in their home state, and to contact the FCC for charges related to telephone services between two states or internationally. *See* FCC Consumer Fact Sheet, entitled "Unauthorized, Misleading, or Deceptive Charges Placed on Your Telephone Bill— 'Cramming,' " located through the FCC website. While it is certainly true that the FCC has jurisdiction to take consumer complaints about cramming, *see* 47 U.S.C. § 207, it does not necessarily follow that the states may not also investigate such complaints. In fact, the FCC recognized the important role of the states in *Vonage,*

a decision declared by the Eighth Circuit to be binding on the federal courts. *In re Vonage Holdings Corp.*, WC Docket No. 03–211, FCC 04–267, 2004 WL 2601194 at ¶ 1 (FCC rel. Nov. 12, 2004) *("Vonage Order"), aff'd, Vonage Holdings Corp. v. Minn. Pub. Utils. Comm'n,* 394 F.3d 568 (8th Cir.2004). In the *Vonage* Order, the FCC preempted an order of the Minnesota Public Utilities Commission that applied Minnesota's traditional telephone regulations to Vonage's voice-over Internet protocol service. The FCC emphasized that the voice-over Internet protocol service could not be separated into interstate and intrastate communications without negating valid federal rules and policies. *Vonage* Order ¶ 1. But, the FCC noted, "states will continue to play their vital role in protecting consumers from fraud, enforcing fair business practices, for example, in advertising and billing, and generally responding to consumer inquiries and complaints." *Id.* In a statement attached to the *Vonage* Order, FCC Chairman Michael K. Powell observed that the states play an important role in combating the practices of slamming and cramming:

> There will remain very important questions about emergency services, consumer protections from waste, fraud and abuse and recovering the fair costs of the network. It is not true that states are or should be complete bystanders

with regard to these issues. Indeed, there is a long tradition of federal/state partnership in addressing such issues, even with regard to interstate services. For example, in long distance services, the FCC and state commissions have structured a true partnership to combat slamming and cramming.

*Vonage* Order, Statement of Chairman Michael K. Powell.[4] While the cases and FCC orders cited by One Call might indeed lend support to One Call's claim for federal preemption, none of them establish a "facially conclusive" case for preemption at this stage in the proceedings.

One Call next argues that the Iowa Utilities Board and the Office of the Consumer Advocate are not seeking to enforce laws of general applicability, and that for this reason their activities are preempted by federal law. One Call cites *Cellco Partnership v. Hatch,* a case in which the Eighth Circuit held that a Minnesota statute seeking to protect consumers from unauthorized changes to their wireless telephone contracts was preempted by federal law. 431 F.3d 1077, 1083 (8th Cir.2005). The court's focus was on 47 U.S.C. § 332(c)(3)(A), a provision prohibiting states from regulating rates or entry in the wireless industry. The court concluded that Minnesota's statute impermissibly regulated wireless telephone rates. *Id.* at 1082. Minnesota argued that the statute

---

4. Courts have reached conflicting conclusions regarding whether state regulation of slamming—that is, the unauthorized switching of a customer's long distance carrier—is preempted by federal law. Some courts have concluded that state regulation is preempted. *See, e.g., Oncor,* 166 F.R.D. at 319 (concluding that removal to federal court was proper); *State v. Minimum Rate Pricing, Inc.,* No. C1–97–008435, 1998 WL 428810, at *4 (Minn. Dist.Ct. April 13, 1998) (holding that defendant was entitled to dismissal of slamming charge because state regulation was preempted by federal law). Other courts have concluded that such claims are not preempted by

federal law. *See Valdes v. Qwest Commc'ns Intern., Inc.,* 147 F.Supp.2d 116, 122 (D.Conn.2001) (holding that federal law did not preempt enforcement of Connecticut's slamming statute); *Castellanos v. U.S. Long Distance Corp.,* 928 F.Supp. 753, 756 (N.D.Ill. 1996) (holding that the Federal Communications Act did not exclusively govern changes in long-distance carriers and remanding to state court); *Doty v. Frontier Commc'ns, Inc.,* 272 Kan. 880, 889, 36 P.3d 250 (Kansas 2001); *QCC, Inc. v. Hall,* 757 So.2d 1115 (Ala.2000) (holding that Alabama's regulatory commission had jurisdiction over a consumer's slamming complaint).

in question was designed to protect consumers against unilateral changes to their cellular contracts, but the Eighth Circuit concluded that, although the federal statute left room for "neutral application of state contractual or consumer fraud laws," the Minnesota statute impermissibly impacted the rates charged by cellular providers. *Id.* at 1083. *Cf. Iowa v. U.S. Cellular Corp.*, No. 4–00–cv–90197, 2000 WL 33915909, at *6 (S.D.Iowa Aug. 7, 2000) (holding that the Act's preemptive force in the cellular context was not strong enough to convert case into one arising under federal law for purposes of removal jurisdiction).

Like the FCC's decision in *Vonage*, the Eighth Circuit's ruling in *Cellco* does not warrant a facially conclusive decision that the Iowa provisions at issue in this case are preempted. The decision in *Cellco* was based on the language of 47 U.S.C. § 332(c)(3)(A), which explicitly preempts the states from regulating the rates that cellular telephone companies may charge. The Eighth Circuit cited a decision in which the FCC sought comments on how to parse jurisdiction between the FCC and the states for wireless billing. *See In re Truth–In–Billing & Billing Format*, CG Docket Nos. 98–170, 04–208, FCC 05–055, 2005 WL 645905 (FCC rel. Mar. 18, 2005) ("*Truth–In–Billing* Order"); *see Cellco*, 431 F.3d at 1081 n. 2. In the *Truth–In–Billing* Order, the FCC tentatively concluded that "the line between the [FCC's] jurisdiction and states' jurisdiction over carriers' billing practices is properly drawn to where states only may enforce their own generally applicable contractual and consumer protection laws." FCC *Truth–In–Billing* Order ¶ 53. But the FCC's order was limited to regulation of the wireless industry, and, as Chairman Powell noted in a statement accompanying the decision, "wireless service is inherently an interstate service." *Truth–In–Billing* Order, Statement of Chairman Michael K.

Powell. In short, while the *Cellco* decision may indeed weigh in favor of preemption, the decision's focus on the cellular context precludes a finding of "facially conclusive" preemption for the purposes of *Younger* abstention here.

### 3. *Is there a conflict between state and federal law?*

One Call argues that where it is impossible to divide interstate services from intrastate services, federal law preempts state law. This is true when state law interferes with valid federal rules or policies in some manner. *See La. Pub. Serv. Comm'n*, 476 U.S. at 376 n. 4, 106 S.Ct. 1890; *Vonage* Order at ¶¶ 14, 17. In the *Vonage* Order, the FCC noted that "[m]ixed-use services are generally subject to dual federal/state jurisdiction, except where it is impossible or impracticable to separate the service's intrastate from interstate components *and the state regulation of the intrastate component interferes with valid federal rules or policies.*" *Vonage* Order ¶ 17 (emphasis added). In this case, neither party has pointed to an explicit federal rule or policy that will clearly be disrupted by the Iowa Utility Board's investigation of the consumer complaints, or by the Iowa statutes at issue. For this reason, the Court cannot conclude that the Board's investigation of One Call, and the pending proceedings, are preempted as a facial matter.

Because the Eighth Circuit has held that Iowa's interest in enforcing its consumer protection laws is an important state interest for *Younger* purposes, and because the Court cannot conclude that Iowa is preempted from investigating cramming complaints as a facial matter, the Court finds that the Iowa Utilities Board has established an important state interest in this case.

### C. *Adequate Opportunity to Raise Federal Questions*

The third requirement of *Younger* abstention is that the state forum provide an

adequate opportunity to raise the federal question. *Norwood,* 409 F.3d at 903. One Call states that it attempted to raise the preemption issue with the Iowa Utilities Board, but the Board docketed the matter for a costly formal proceeding without addressing the preemption question. One Call Resistance at 5 n. 3. The Office of the Consumer Advocate states that One Call "did not present the federal issues it presents here." OCA Abstention Mem. at 6. The Board claims that "[t]he proceedings before the Board will allow [One Call] an adequate opportunity to raise the federal questions it now presents." IUB Abstention Mem. at 5. The Board further states that it has not yet decided whether it has jurisdiction over the complaints in the current case.[5] IUB Abstention Mem. at 5.

█ A central principle of *Younger v. Harris* is that "state courts have the solemn responsibility equally with the federal courts to safeguard constitutional rights." *Trainor,* 431 U.S. at 443, 97 S.Ct. 1911 (quoting *Steffel v. Thompson,* 415 U.S. 452, 460–61, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974)). There is no reason to think that the Iowa Utilities Board is not equipped to consider One Call's federal preemption claims. As mentioned above, the Iowa Supreme Court has affirmed the Board's decision that an Iowa statute was preempted by federal law on at least one occasion. *See Office of Consumer Advocate,* 656 N.W.2d at 104. The Board's decisions are subject to review in Iowa's state courts, and parties are afforded the opportunity, albeit remote, to appeal federal questions to the United States Supreme Court. *See Chick Kam Choo v. Exxon Corp.,* 486 U.S. 140, 149–50, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988) (construing the Anti–Injunction Act and stating: "[w]hen a state proceeding presents a federal issue, even a pre-

emption issue, the proper course is to seek resolution of that issue by the state court."). For these reasons, the Court concludes that the proceedings in front of the Iowa Utilities Board present an adequate opportunity for One Call to raise its federal preemption claim. Because there is an ongoing proceeding in front of the Iowa Utilities Board that implicates an important state interest, and because that proceeding affords One Call the opportunity to raise the issue of federal preemption, the Court will abstain pursuant to *Younger.*

## IV.  CONCLUSION

For the reasons discussed above, the Motions for Abstention (Clerk's No. 5 & 7) filed by the Office of Consumer Advocate and the Iowa Utilities Board are GRANTED. One Call's Motion for Preliminary Injunction (Clerk's No. 2) is DENIED. One Call's Motion to Strike OCA's Memorandum and Appendix is also DENIED. One Call's Complaint (Clerk's No. 1) is DISMISSED. *See Cedar Rapids Cellular,* 280 F.3d at 882–83 (dismissal appropriate upon grant of motion for Younger abstention where no claims remain pending in federal court).

IT IS SO ORDERED.

█

5. The Board pointedly avoids taking a position on the question of preemption in its Reply brief. *See* IUB Reply at 1.